The **SUPERIOR OIL COMPANY**, a Nevada corporation, Appellant,

v.

**UNITED STATES** of America, **H. E. O'Harra, Ralph M. Tipling, Abbot Sekaquaptewa, Mathew Silas, Hanson Tootsie and Ira Tewa,** Appellees.

No. 19640.

United States Court of Appeals
Ninth Circuit.

Oct. 28, 1965.

Philip J. Shea, Fennemore, Craig, Allen & McClennen, Phoenix, Ariz., Rawlings, Wallace, Roberts & Black, Salt Lake City, Utah, for appellant.

J. Edwards Williams, Acting Asst. Atty. Gen., Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., Jo Ann D. Diamos, U. S. Atty., Phoenix, Ariz., for appellees United States and O'Harra, Tipling, Silas, Tootsie and Tewa.

John S. Boyden, Bryant H. Croft, Allen H. Tibbals, Salt Lake City, Utah, for appellee Abbot Sekaquaptewa.

Before CHAMBERS, MERRILL and BROWNING, Circuit Judges.

MERRILL, Circuit Judge:

This appeal is taken from judgment of the District Court for the District of Arizona, dismissing appellant's action for want of jurisdiction.

Appellant holds an oil and gas lease upon a five-acre parcel of land in the State of Arizona. The land was owned and was leased to appellant by the Women's American Baptist Home Mission Society, having been acquired by the Society through patent issued by the United States in 1910. The parcel lies within an area of the Hopi Indian Reservation which has been declared the sole and exclusive property of the Hopi Indians, subject to the trust title of the United States. Healing v. Jones, 210 F.Supp. 125 (D.Ariz.1963); affirmed 373 U.S. 758, 83 S.Ct. 1559, 10 L.Ed.2d 703 (1962).

The Hopi Indian tribe has had in effect an ordinance regulating the prospecting for, discovery and extraction of gas and petroleum from within the confines of the Reservation. Under ordinances approved by the Secretary of the Interior, and with the aid of the United States Geological Survey, the tribe has inaugurated a program for the development of the petroleum resources of the Reservation. As a part of this program various applicants have been permitted to drill core holes but with limitations imposed as to depth of drilling and other factors. Appellant has secured from the State of Arizona a permit to drill for oil which permit the tribe challenges. The tribe regards appellant's purpose of drilling on the leased premises as detrimental to the orderly development of natural resources on the Reservation and a threat to the tribal program.

An access dirt road, one and one-half miles in length, connects the leased premises with State Highway 264. Appellant sought to move heavy equipment on to the leased premises over this access road. Indian officers then informed appellant that the access road was closed to heavy equipment. A roadblock was established and access to the road from Highway 264 was barred to all such equipment, with officers of the United States joining tribal officers in this action.

Appellant then brought this suit, seeking an injunction against the individual officers of the United States and the tribe and money judgment against the United States for the trespass allegedly committed by these officers. The defendants responded with a motion to dismiss, contending that the United States had not consented to suit and that it is an indispensable party since the individuals had been acting lawfully within the scope of their authority and that any injunction would in effect be one against the United States.

The District Court ruled that the officers were justified in barring the access road to heavy equipment since "It would cause damage to the unstable road-

bed," and that such action, accordingly, was within the scope of their authority.

Appellant then sought to establish an alternative route. Such a route was located and appellees have stipulated that, assuming appellant's right to construct it, it is appropriate. Appellees, however, continued to block appellant's access to Reservation lands for the purpose of constructing the alternative road. Appellant thereupon sought a restraining order. Appellees renewed their motion to dismiss. The action was dismissed and this appeal followed.

The principal purpose of this suit is to enjoin the continuation of the roadblock and to enable appellant to get its drilling equipment on to the leased premises. The principal targets are the individual officers appellant seeks to enjoin. The principal point upon appeal is whether appellant may enjoin these individual officers from continuing to bar access to Reservation lands.

Concededly the United States has not consented to be sued for injunction and the question before us is whether this lack of consent is fatal to the jurisdiction of the District Court. If the officers in barring access to Reservation lands were acting within the scope of their authority, they were acting for the tribe and for the United States in its trust capacity. The injunction, in effect, would be one against the United States and the United States would be an indispensable party. In absence of its consent to suit, suit could not be maintained.

The acts of the officers were ostensibly on behalf of the Indian tribe and the United States in its trust capacity. Whether they were acting within the scope of their authority depends, among other factors, upon whether the Mission and appellant as its lessee possess an implied easement of access to the parcel owned by the Mission, which easement the officers were obliged to honor and with which they had no authority to interfere. Appellees contend that appellant's remedy is to apply to the tribe for an easement under Title 25, Part 161, of the Code of Federal Regulations, which provides for the manner of obtaining an easement over reservation lands. Appellant has not so applied.

We accept (arguendo) appellant's contention that if a right of access existed which would encompass appellant's purposes and needs, a duty existed in the individual officers to permit access over the route which they had stipulated was appropriate; that they were without authority to bar access in disregard of appellant's rights; and that appellant, already having a right of access, was not required to proceed under Federal Regulations to secure such a right.[1] The vital question is whether the patent to the Mission carried such an easement with it by implication. In our judgment it did not.

Appellant's position is simply that since the patent to the Mission was in unrestricted fee simple it carried with it by implication a way of necessity over lands of the United States for all purposes to which the conveyed land might lawfully be put.

 Such is not the law. The scope and extent of the right of access depends not upon the state of title of the dominant estate, nor the existence or lack of limitations in the grant of that estate, but upon what must, under the circumstances, be attributed to the grantor either by implication of intent[2] or by op-

1. This contention appellees vigorously dispute. They contend that even if an easement existed their acts amounted to an authorized seizure of such property right for which the appropriate remedy was not injunction but an action in the Court of Claims under the Tucker Act.

2. Thompson in his treatise on Real Property summarizes the basis of easements by necessity as follows:
"It has been postulated that the true basis of a way of necessity is public policy rather than intent of the parties. So a way exists where the cause of sepa-

eration of law founded in a public policy favoring land utilization.[3]

█ Under either approach there are factors here which in our judgment preclude the implication of an easement for appellant's purposes.[4] We note three factors:[5]

### 1. *The purpose of the grant*

The conveyance was made pursuant to statute. 35 Stat. 781, 814, March 3, 1909. Although the statute authorized conveyance in fee simple it carefully limited the circumstances under which a grant could be made. Grants could only be made to "the duly authorized missionary board, or other proper authority, of any religious organization engaged in mission or school work on any Indian reservation, for such lands thereon as have been heretofore set apart to and are now being used and occupied by such organization for mission or school purposes." [6]

The intention of Congress clearly was to facilitate and encourage the work then being done by the missions among the Indians. This purpose is further emphasized by the fact that the statutory authority related to lands actually then being put to use by the missions.[7]

---

ration is condemnation not grant, or where the conveyance was by act of law not of the parties. The doctrine is based upon public policy which is favorable to the full utilization of land and the presumption that the parties do not intend to render the land unfit for occupancy. Even where this is the court's theory, still the way rests on the concept of an implied grant. The courts are in concert in saying that every way of necessity is founded on a presumed or implied grant. The necessity does not in any case create the right. It is only a circumstance resorted to for the purpose of showing the intention of the parties, and raising an implication of a grant." Thompson, 2 Real Property, § 364 at 430 (1961).

3. See: 2 Thompson, Real Property, § 362 at 410 (1961).

4. Since the Constitution gives Congress general power over lands of the United States, see U.S.Const. Art. IV, § 3, Cl. 2, and since the lands through which the claimed easement passes are owned by the United States, the extent of the easement is governed by federal law unless there is a federal statute which makes state or local law applicable. United States v. Oklahoma Gas & Electric Co., 127 F.2d 349, 352 (10th Cir. 1941), affirmed 318 U.S. 206, 63 S.Ct. 534, 87 L.Ed. 716 (1943). The statute pursuant to which the patent was granted to the Mission does not provide that state or local law is to govern the extent of the easements which may pass with the patent. Act of March 3, 1909, 35 Stat. 781, 814. Federal law, therefore, applies although it does not appear that we would reach any different conclusion on the extent of the easement under Arizona law.

5. When land in one ownership is divided into separately owned parts the Restatement of Property, § 476, lists the following factors as being important in determining what sort of an easement can be implied: (a) whether the claimant is the conveyor or the conveyee, (b) the terms of the conveyance, (c) the consideration given for it, (d) whether the claim is made against a simultaneous conveyee, (e) the extent of necessity of the easement to the claimant, (f) whether reciprocal benefits result to the conveyor and the conveyee, (g) the manner in which the land was used prior to its conveyance, (h) the extent to which the manner of prior use was or might have been known to the parties.

6. This statute was one of three to authorize the giving of reservation lands to missions. An earlier statute in 1889 (25 Stats. 888), and a later one in 1922 (42 Stats. 994), both limited the authorized grant to a fee simple determinable—the fee to last only so long as the lands were used for mission purposes. While the statutory authority was not so limited as to the patent to appellant's lessor and there can be no question but that an unrestricted fee title was authorized and that the property may be put to any lawful use, still, the governmental purpose behind the grant and the implications to be drawn from it are emphasized by this legislative history.

7. The Restatement of Property, § 476(i), provides:
"The manner in which land was used prior to its conveyance is important in determining whether an easement was intended to be created by the conveyance. The fact that it was used in a particular way is some indication that the parties contemplated its use in a similar way thereafter.

### 2. The fact that the grant was without consideration

This, it would seem, raises a most rational inference that the grantor, moved by charitable reciprocity, intended, as a donation in addition to the lands granted, no greater right of access than was required to permit the Mission to enjoy the granted premises in manner contemplated and in fulfilment of the purpose of the grant.[8]

### 3. The position of the grantor

The United States in 1909 and 1910 held these lands in trust for the Hopi Indians. The purpose of the statute of 1909 and the grant of 1910 was furtherance of the interests of the Indian wards. The statute and the grant, respectively, constituted a statement of public policy and an act in furtherance of that policy. Not only was the land granted Indian land, but the remaining land over which access is sought is also Indian land.

Certainly it cannot be said either that public policy demands or that the Indians' trustee impliedly intended a grant of a way of access across Indian lands greater in scope than was required for mission purposes and whose greater scope was necessary only in order to permit the granted lands to be used in a fashion adverse to the interests of the Indians. This is not to say that the land granted cannot lawfully be used for purposes adverse to the interests of the Indians. It is to say only that neither public policy nor a rational implication of intent on the part of the United States as trustee requires that this adverse purpose be implemented and made possible by a still further alienation of Indian property.

We conclude that appellant does not possess a way of access over Reservation lands such as is here sought to be established, and that it was within the authority of the individual appellees to bar appellant from such lands until such time as an easement had been secured in the manner provided by Federal Regulations. The United States thus was an indispensable party and dismissal of the claim for injunction was proper.

We come then to the claim against the United States for money damages under the Tort Claims Act, a claim which appellant conceded to the District Court was secondary in importance to its claim for an injunction.

In disposing of the main point of this appeal we have, of necessity, determined not only that the acts of the individuals were authorized but also that they were not tortious. There was no property right of appellant upon which they had trespassed. Accordingly we deem it unnecessary to discuss the issues presented respecting this claim.

Affirmed.

---

8. See Restatement of Property, § 476(e).