300 F.3d 1144
 SAFARI AVIATION INC., dba Safari Helicopter Tours, Petitioner,
v.
Jane F. GARVEY, Administrator, Federal Aviation Administration, Respondents.
Safari Aviation Inc., dba Safari Helicopter Tours, Petitioner,
v.
Federal Aviation Administration, Respondent.
 No. 98-70013.
 No. 00-71520.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 7, 2002.
 Filed August 26, 2002.
 
 COPYRIGHT MATERIAL OMITTED David Glenn Bettencourt, Honolulu, Hawaii, for the petitioner.
 Constance A. Wynn, Department of Justice, Civil Division, Washington, D.C., for the respondent.
 On Petitions for Review of Two Orders of the Federal Aviation Administration. FAA No. 27919.
 Before WALLACE, TASHIMA and TALLMAN, Circuit Judges.
 OPINION
 TALLMAN, Circuit Judge.
 
 
 1
 Safari Aviation, Inc., d/b/a Safari Helicopter Tours ("Safari") is an aeronautical business which operates helicopters and fixed-wing aircraft for sightseeing tours of tourist attractions in Hawaii as an on-demand Air Taxi Commercial Operator. Safari petitions for review of two orders of the Federal Aviation Administration ("FAA") promulgating Special Federal Aviation Regulation 71 ("SFAR 71"), which establishes procedural, operational, and equipment safety requirements for air tour operators in Hawaii. We upheld emergency rule SFAR 71, issued on September 16, 1994, in Hawaii Helicopter Operators Ass'n. v. FAA, 51 F.3d 212 (9th Cir.1995). In No. 98-70013, Safari petitions for review of the FAA's decision to extend SFAR 71 for an additional three years. In No. 00-71520, Safari petitions for review of the FAA's decision to establish SFAR 71 as a final rule. Safari contends that the FAA unlawfully and arbitrarily promulgated SFAR 71, and that the final rule decreases aviation safety and increases the risk of predictable accident scenarios. We have jurisdiction under 49 U.S.C. § 46110, and we dismiss the petition in appeal No. 98-70013 as moot, and deny the petition in appeal No. 00-71520.
 
 I. Facts and Prior Proceedings
 A. Emergency Rule SFAR 71
 
 2
 The FAA issued SFAR 71 as an emergency rule in September 1994. Air Tour Operators in the State of Hawaii, 59 Fed. Reg. 49,138 (Sept. 26, 1994) (codified at 14 C.F.R. pts. 91 & 135). The FAA cited "an escalation of air tour accidents" as the reason for the rule, and stated that "[t]he regulation is intended to enhance the safety of air tour operations within the State." Id. Accident data for the nine-year period between 1982 and 1991, a time of substantial industry growth, established that there were eight air tour accidents in Hawaii which resulted in a total of twenty-four fatalities. For the three-year period from July 1991 through July 1994, the agency reported that the accident rate jumped to twenty air tour accidents with twenty-four fatalities. Id. at 49,139.
 
 
 3
 The FAA was concerned about the substantial increase in the accident rate and the risks associated with low-flying air tours in Hawaii.[1] SFAR 71 imposes "Special Operating Rules" for airplane and single-engine helicopter air tours. Section 3 of the regulation requires operators who venture off shore to either use amphibious helicopters or helicopters equipped with floats; or they must require passengers to wear approved flotation gear. Id. at 49,145. Section 4 requires operators to file a helicopter performance plan before each air tour flight. Section 5 mandates that air tour operators maintain appropriate height and forward speed to allow the safe landing of helicopters in the event of an engine failure. Id. at 49,146.
 
 
 4
 Section 6 imposes a minimum flight altitude of 1,500 feet above ground level for all aircraft, and requires operators to maintain a standoff distance of 1,500 feet from any person or property except when necessary for takeoff and landing, air traffic control compliance, or as otherwise authorized by the FAA. Section 7 requires air tour operators to brief passengers on water ditching procedures, use of required flotation equipment, and emergency egress from the aircraft in the event of a water landing. Id. The emergency rule became effective on October 26, 1994, and the public comment period ended on December 27, 1994.
 
 
 5
 The Hawaii Helicopter Operators Association ("HHOA") promptly petitioned this Court to challenge the validity of the emergency rule on the ground that it was issued in violation of the Administrative Procedure Act's ("APA") notice and comment provision, 5 U.S.C. § 553(c). In a published opinion, we held that the FAA had properly invoked the good cause exception to § 553(c), and we rejected HHOA's claim that the 1,500-foot minimum altitude requirement in SFAR 71 was arbitrary and capricious. Hawaii Helicopter Operators Ass'n. v. FAA, 51 F.3d 212, 214-16 (9th Cir.1995).[2]
 
 B. Interim Rule SFAR 71
 
 6
 The FAA extended SFAR 71 as an interim rule on October 30, 1997, with the stated goal of "ensur[ing] that regulatory requirements for the safe operation of air tours in the airspace over the State of Hawaii remain in effect." Air Tour Operators in the State of Hawaii, 62 Fed.Reg. 58,854 (Oct. 30, 1997) (codified at 14 C.F.R. pts. 91 & 135). The FAA also published a "discussion" of some of the more than 200 public comments it received from entities including the NTSB, air tour operators, helicopter associations, and environmental groups. Id. at 58,855-58,859.
 
 
 7
 Many comments were critical of the minimum flight altitude requirement, including the concern that the requirement does not account for cloud cover and weather conditions in Hawaii which affect visibility and may compromise a pilot's ability to maintain the required distance from clouds. Several commenters, including the HHOA, also warned that the minimum altitude requirement will cause air tour traffic to be concentrated at the same altitude, thereby increasing the risk of mid-air collisions and decreasing overall air safety. The NTSB expressed the concern that the altitude requirement may lead to increased operating time over water, difficulties in regulatory enforcement, and possible disregard of the FAA regulation.
 
 
 8
 The FAA agreed that the minimum operating altitude requirement was "[o]ne of the most contentious aspects" of SFAR 71, but noted that "after working closely with air tour operators," it had mitigated the problem by allowing selected deviations on a case-by-case basis. Id. at 58,857. Since 1994, the FAA has granted deviations to "the majority of air tour operators" in Hawaii. For instance, air tour operators of single-engine helicopters have been granted deviations to conduct air tours at a minimum of 500 feet. These deviations are site-specific, and are only allowed over areas of raw terrain (i.e., areas devoid of persons, vehicles, etc.). Safety is not compromised, the FAA asserts, because of additional safety measures, including careful FAA screening of operators before they are granted a deviation. Id.
 
 
 9
 In response to comments regarding costs associated with complying with SFAR 71, the FAA states that it "believes that the SFAR has not had a direct impact on the viability of the air tour industry in Hawaii." By granting deviations, the FAA contends, it has mitigated the costs of the SFAR and ensured that commercially viable air tours are still available to the public. Finally, in response to comments that the FAA's promulgation of SFAR 71 was a response to residents' complaints about noise pollution, the FAA "reiterates its strong statement" that safety was the reason the agency promulgated the rule.
 
 C. Final Rule SFAR 71
 
 10
 The FAA issued a notice of proposed rulemaking ("NPRM") on August 23, 2000, indicating an intent to extend interim rule SFAR 71 for another three years and soliciting comments on the extension of SFAR 71 as a final rule. Air Tour Operators in the State of Hawaii, 65 Fed.Reg. 51,512 (Aug. 23, 2000) (codified at 14 C.F.R. pts. 91 & 135). In this NPRM, the FAA explained that the extension was necessary to provide additional time for the agency to issue an NPRM regarding a national rule that would apply to all air tour operators. Id. The deadline for comments on the proposed extension was September 22, 2000.
 
 
 11
 Safari mailed its comments regarding the proposed extension of SFAR 71 on September 22, 2000, and the FAA received them on September 25, 2000. In its statement, Safari contended that "the imprudent and unjustified specifications within SFAR 71 have claimed the lives of thirteen person[sic] in two fatal helicopter accidents...." The document goes on to detail how the 1,500 foot minimum altitude requirement may have played a factor in two recent air tour helicopter accidents.
 
 
 12
 The FAA nonetheless issued the final rule extending SFAR 71 for another three years on September 29, 2000. Air Tour Operators in the State of Hawaii, 65 Fed. Reg. 58,610 (Sept. 29, 2000) (codified at C.F.R. pts. 91 & 135). The FAA again indicated its intent, in the near future, to promulgate a national rule to apply to all air tour operators, at which time SFAR 71 would be rescinded. Id. In its discussion of the comments regarding the extension of SFAR 71, the FAA indicated that it had received four comments, all of which supported the extension. Regarding the NPRM published on August 23, 2000, the FAA reported having received only one adverse comment, from Blue Hawaiian Helicopters. This comment indicated that "some air tour pilots believe the altitude restrictions may have contributed to the three accidents that have occurred since the SFAR was adopted in 1994." Id. The FAA did not review Safari's comments before issuing the final rule extending SFAR 71.
 
 
 13
 The FAA justified its promulgation of emergency final rule SFAR 71 on the grounds that a "large number of accidents ... occurred in Hawaii between 1982 and 1991"; that the interim and final versions of SFAR 71 were needed to ensure the safety of all air tour operations in Hawaii; and that the forthcoming national air tour safety rule would soon replace SFAR 71. As to the cause of the three accidents referenced by Blue Hawaiian, the FAA declined to respond on the ground that the NTSB had not yet issued a final report on any of these accidents, but that the "complete accident history of tour operations in Hawaii supports the extension of SFAR 71." Id. at 58,611.
 
 D. Circuit Court Proceedings
 
 14
 Safari filed a timely petition for review of the October 1997 interim rule. The parties consented to mediation pending the FAA's publication of a NPRM regarding the "forthcoming" national air tour safety rule. After three years in mediation, and with the expiration of the interim rule looming, the FAA reissued SFAR 71 as a final rule on September 29, 2000. Safari then filed a timely petition for review of the final rule. In light of the FAA's failure to publish the NPRM regarding a national air tour rule, Safari's two petitions were subsequently consolidated and submitted for our decision.
 
 II. Analysis
 
 15
 Under the APA, we may not set aside an agency's action unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 5 U.S.C. § 706(2)(A) (2001); Brower v. Evans, 257 F.3d 1058, 1065 (9th Cir.2001). We also apply the arbitrary and capricious standard to resolve factual disputes involving substantial agency expertise. Ninilchik Traditional Council v. United States, 227 F.3d 1186, 1194 (9th Cir.2000). Review under this standard is narrow, and we must not substitute our judgment for that of the agency. Id. "Agency action should be overturned only when the agency has `relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" Pac. Coast Fed'n of Fishermen's Ass'ns, Inc. v. Nat'l Marine Fisheries Serv., 265 F.3d 1028, 1034 (9th Cir.2001) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)).
 
 A. The Rulemaking Proceedings
 
 16
 Safari seeks review of both the October 1997 interim rule, which expired on October 26, 2000, and the October 2000 final rule, which remains in effect until October 2003. As the life of the interim rule is over, no purpose is served by reviewing its rulemaking procedures. However, the final rule is in substance identical to the interim rule. Comments and responses made during the promulgation of the interim rule address the same issues as were raised with respect to the final rule. Therefore, while we do not review the October 1997 interim rule and its associated rulemaking procedures, we may nonetheless consider the comments and the FAA's responses with respect to the October 1997 interim rule in reviewing the promulgation of the October 2000 final rule. As we explain later, we dismiss Safari's procedural complaints regarding the interim rule as moot because that rule has expired.
 
 
 17
 Safari argues that the FAA failed to conduct a meaningful disposition of "possibly 100+" comments it received which were critical of its safety analysis, and that it dismissed criticism from knowledgeable sources (i.e., pilots) by simply referring to its practice of granting deviations in response to these concerns. In particular, Safari contends that the FAA failed to address comments that the 1,500-foot minimum altitude requirement does not take into account prevailing weather conditions in Hawaii, that it may increase the probability of flying into bad weather, that it will cause air tour traffic to be concentrated at the same altitude, and that it creates hazardous conditions for emergency landings. As for the FAA's policy of granting deviations, Safari suggests that because the FAA did not detail the circumstances under which it grants (or declines to grant) deviations, this practice may itself constitute unlawful rulemaking.
 
 
 18
 "The APA requires an agency to: (1) publish a general notice of proposed rulemaking; (2) give interested parties an opportunity to participate in the rulemaking through submission of data, views, and arguments; and (3) adopt a rule after consideration of the relevant matter presented." Hall v. EPA, 273 F.3d 1146, 1163 (9th Cir.2001). We will not usually overturn agency action unless there is a showing of prejudice to the petitioner. Id. at 1163-64. An agency's failure to respond to comments will not support reversal unless it reveals that the agency's decision was not based on consideration of the relevant factors. Am. Mining Cong. v. EPA, 965 F.2d 759, 771 (9th Cir.1992).
 
 
 19
 The FAA adequately responded to the comments it received regarding SFAR 71. The FAA was required to respond only to "significant" comments, a category limited to those which "raise relevant points, and which, if adopted, would require a change in the agency's proposed rule." Id. Both parties agree that the most "contentious" aspect of SFAR 71 is the 1,500-foot minimum altitude requirement. The FAA summarized the numerous safety concerns which were raised regarding this requirement, and explained in response that it believed that the requirement would improve safety by giving pilots more time to react to emergency situations. It is reasonable to believe that pilots of higher flying aircraft will have more time to locate a suitable landing site in an emergency, and will be better able to prepare and instruct passengers. Thus, the FAA both acknowledged the comments identified by Safari and provided a reasoned response which demonstrated that its action was based on relevant safety considerations.
 
 
 20
 We also reject Safari's objections to the FAA's practice of granting case-by-case deviations to avoid clustering of aircraft at the 1,500 foot level. The deviations are interpretive rules which apply the "exceptions" provision of Section 6 of SFAR 71. We review de novo whether an agency's action results in an interpretation or a new rule. Gunderson v. Hood, 268 F.3d 1149, 1154 (9th Cir.2001). Interpretive rules are not subject to APA notice or comment provisions because they clarify or explain existing law or regulations in order to advise the public of the agency's construction of the rules it administers. Id. By granting the deviations, the FAA has provided "the majority of Hawaii air tour operators" with specific interpretations of how SFAR 71's minimum altitude requirement applies to them in light of their individual safety qualifications and differences in local terrain and prevailing conditions. This is another rational reason the FAA has provided to explain why the safety related criticisms of SFAR 71 have been mitigated since the rule's enactment.[3]
 
 
 21
 Safari also argues that the FAA ignored the comments it made in response to the rulemaking. Safari contends that the FAA failed to include its comments regarding the August 23, 2001, NPRM in the administrative record, and that it failed to issue a response. By making these omissions, Safari asserts that the FAA denied its constitutional, statutory, and regulatory right to participate in the rulemaking.
 
 
 22
 The FAA admits that it "overlooked" Safari's comment on the final rule, as well as the comments submitted by three other groups.[4] These four comments were not examined by the FAA until after the final rule went into effect. The FAA argues, however, that its failure to consider the comments before promulgating the final rule does not support reversal because none of the four comments raised new issues. SFAR 71 had already been extended twice, the FAA contends, and had remained unchanged since its initial enactment in 1994. The FAA was not required to reiterate its prior responses to issues which were adequately addressed during previous rulemaking proceedings.
 
 
 23
 We hold that the FAA's failure to examine Safari's comments before promulgating the final rule is harmless under these circumstances. The main thrust of Safari's comments on the final rule concerned safety aspects of the 1,500-foot minimum flight altitude requirement, an issue that had been extensively commented on and discussed in previous rulemaking proceedings. Most of Safari's points were also made by Blue Hawaiian Helicopters, an entity whose comments were specifically referenced by the FAA in the final rule. Blue Hawaiian argued, just as Safari did, that recent air tour accidents had been caused by SFAR 71.
 
 
 24
 The FAA declined to address the cause of these accidents because the NTSB reports were not yet available, but reiterated that the overall accident rate during the period before enactment of SFAR 71 justified the safety measures contained therein. 65 Fed.Reg. 58,610, 58,611. The FAA also pointed to its practice of granting deviations to the majority of air tour operators as evidence that it mitigated the negative effects of the minimum altitude requirement. Finally, the sharp drop in the accident rate since the enactment of SFAR 71 persuasively suggests that it has helped to increase overall air tour safety. 62 Fed. Reg. 58,854, 58,856-58,857. In light of these facts, the FAA's response to comments regarding the cause of recent air tour accidents was adequate.
 
 
 25
 Safari claims that the FAA engaged in "improper ex parte contacts" during the rulemaking proceedings and requests that we direct supplementation of the administrative record as a remedy. Safari fails to cite any evidence of improper communications between the FAA and Hawaii's congressional delegation, or with any other officials. We reject this unsubstantiated claim.
 
 
 26
 Finally, Safari identifies two minor procedural deficiencies regarding the extension of SFAR 71 as an interim rule in 1997 as grounds for reversal of the FAA's actions. Because the interim rule has since expired, these procedural issues are moot.
 
 B. The Basis for SFAR 71
 
 27
 Safari argues that SFAR 71 is itself arbitrary and capricious because it imposes requirements on Hawaii's air tour industry not applicable to pilots in any of the 49 other states. Safari argues that Hawaii's topography alone cannot justify SFAR 71, and suggests the rule was motivated by complaints about noise raised by some residents who objected to overflights of their land.
 
 
 28
 We reject Safari's bald assertion that in extending SFAR 71, the FAA "secretly attempted to establish a one-state noise rule in the guise of a safety rule." The FAA's rulemaking in this case is a rational response to the escalation of air tour accidents (and attendant fatalities) just prior to its promulgation, and the request by the NTSB for increased FAA safety regulation of Hawaii air tour operators. Extension of SFAR 71 as both an interim and final rule is also justified by the decrease in the air tour accident rate subsequent to the initial promulgation of SFAR 71. We hold that the rule is neither arbitrary nor capricious.
 
 III. Conclusion
 
 29
 The FAA did not arbitrarily and capriciously deny Safari the opportunity to participate in a meaningful rulemaking proceeding when it twice extended SFAR 71. The FAA solicited and later discussed comments it received from interested parties, and fairly addressed the relevant criticisms of the rule. Safari's claims regarding the FAA's failure to address some of its comments and its assertions regarding minor procedural defects in the rulemaking process are rejected because Safari failed to demonstrate any prejudice. Finally, the FAA had a rational basis for promulgating SFAR 71, and the rule is not arbitrary or capricious.
 
 
 30
 The petition in No. 98-70013 is DISMISSED. The petition in No. 00-71520 is DENIED.
 
 
 
 Notes:
 
 
 [1]
 The FAA also cited the fact that the National Transportation Safety Board ("NTSB") made specific recommendations to the FAA regarding the need for increased safety regulation of air tours in Hawaii following its investigation of an accident which occurred near Mt. Haleakala on the Island of Maui in April 1992. 59 Fed.Reg. at 49,141
 
 
 [2]
 Our opinion also expressly retained jurisdiction "of any further petitions for review of SFAR No. 71 or any other successor regulation from the comment period" by theHawaii Helicopter panel. 51 F.3d at 216. The prior panel subsequently relinquished jurisdiction to this panel of the Court.
 
 
 [3]
 The FAA cites agency documents which detail the criteria for granting deviations under SFAR 71See Air Transportation Operation Inspector's Handbook, Section 8400.10, Vol. 1, Chap. 4, § 4, "Exemptions, Deviations, Waivers and Authorizations," (available at http://www.faa.gov/avr/afs/faa/8400/8400_vol1/1_004_04.pdf); Section 8400.10, Vol. 3, Chap. 1, § 4, Part B, Op Spec B048, "Operations in the Vicinity of the Hawaiian Islands," (available at http://www.op-specs.com/OpssDraftParaTalks/Final/01-b48.-doc).
 
 
 [4]
 The other "lost" comments were from two organizations with concerns about flights paths over sensitive areas, and a government organization's favorable comments regarding the final rule. The environmental concerns raised by the two organizations were substantially addressed in the FAA's promulgation of the interim rule, and the FAA's failure to address them before promulgating the final rule is not at issue in this proceeding