John James McFARLAND, Plaintiff,

v.

Dirk KEMPTHORNE, in his capacity as Secretary of the Department of Interior; Suzanne Lewis, in her capacity as Superintendent of Glacier National Park, Defendants,

and

National Parks Conservation Association, Defendant–Intervenor.

No. CV 00–20–M–DWM.

United States District Court,
D. Montana,
Missoula Division.

Nov. 17, 2006.

Ronald W. Opsahl, William P. Pendley, Mountain States Legal Foundation, Lakewood, CO, Stephen C. Berg, Johnson Berg McEvoy & Bostock, Kalispell, MT, for Plaintiff.

Mark Steger Smith, Office of the U.S. Attorney, Billings, MT, for Defendants.

Alan A. Pemberton, Charles H.P. Vance, David E. Finkelson, Emily S. Williams,

Vijay Shanker, Kelly M. Jaske, William J. Friedman, Covington & Burling, Washington, DC, Jack R. Tuholske, Tuholske Law Office, Missoula, MT, for Defendant–Intervenor.

### ORDER

MOLLOY, Chief Judge.

## I. Introduction

Plaintiff, John McFarland, owns a tract of land completely surrounded by Glacier National Park. McFarland brought suit against the United States to quiet title to an easement along Glacier Route 7, the road McFarland uses to access his property. Specifically, McFarland's suit alleges the National Park Service's closure of Glacier Route 7 to motorized vehicles during winter months interferes with his vested property rights. The suit also challenges the Park Service's denial of McFarland's request for a special use permit to drive and snowmobile on Glacier Route 7 during the winter. Before the Court are the parties' cross-motions for summary judgment.

## II. Factual and Procedural Background

McFarland owns a 2.75 acre plot of land located within the boundaries of Glacier National Park, in an area commonly referred to as Big Prairie (the "Property"). Stipulation of Facts ¶ 1; Defs.' Undisp. Facts ¶ 1. The Property was originally granted to Charles F.W. Schoenberger. Defs.' Undisp. Facts Ex. 4. Prior to 1916, Schoenberger staked a claim to the Property pursuant to the Homestead Act of 1862, which permitted individuals "to enter upon ... unappropriated public lands" to establish homesteads. Act of May 20, 1862, 12 Stat. 392–93; Pl.'s Undisp. Facts ¶ 11. The Property was granted to Schoenberger in a 1916 land patent issued by President Woodrow Wilson. Defs.' Undisp. Facts Ex. 4. The land patent granted: "TO HAVE AND TO HOLD the said tract of Land, with the appurtenances thereof unto the said claimant and to the heirs and assigns of the said claimant, forever." Defs.' Undisp. Facts Ex. 4.

A gravel road, variously known as the North Fork Road, the Inner North Fork Road, and Glacier Route 7 (hereinafter "Glacier Route 7"), exists generally running north and south adjacent to the Property. Stipulation of Facts ¶ 2; Defs.' Undisp. Facts ¶ 6. Glacier Route 7 was originally constructed in 1901 by the Butte Oil Company to permit access to a mining claim at Kintla Lake. Pl.'s Undisp. Facts ¶ 5; Defs.' Undisp. Facts ¶ 7. It extends nearly to the Canadian border approximately 15 miles north of the Property and to the Village of Apgar approximately 30 miles south of the Property. Stipulation of Facts ¶ 2. Approximately 3.2 miles south of the Property, a spur road branches off of Glacier Route 7 at the Polebridge Ranger Station and exits Glacier National Park. Stipulation of Facts ¶ 2. Glacier Route 7 is, and always has been, the only road over which McFarland and his predecessors in title have been able to drive a motorized vehicle between the Property and the Polebridge Ranger Station to exit Glacier National Park. Stipulation of Facts ¶ 3.

Snowmobiling has been generally prohibited in Glacier National Park since 1975. Defs.' Undisp. Facts ¶¶ 51–53. Additionally, Glacier Route 7 is closed to automobiles seasonally by snow. Defs.' Undisp. Facts ¶ 33. The closure date and duration varies. Defs.' Undisp. Facts ¶ 33. Historically, however, the portion of Glacier Route 7 from the Polebridge Ranger Station to the Property has been closed from December 1 to May 1. Administrative Record ("AR") at 36. Prior to 1999, Park Service rangers permitted inholders to access their property in winter using motorized means along Glacier Route 7. Pl.'s Undisp. Facts ¶¶ 26–27; Defs.' Undisp.

Facts ¶¶ 40–42. When a gate was placed across Glacier Route 7 at Polebridge Ranger Station in 1988, the Park Service implemented a double-lock system to allow inholders motorized access to their properties. Stipulation of Facts ¶ 4; Pl.'s Undisp. Facts ¶¶ 35–36; Defs.' Undisp. Facts ¶ 42. The parties dispute the extent of the inholders' authorized access. McFarland claims access was permitted throughout the winter months. Pl.'s Undisp. Facts ¶¶ 26, 35–36. Defendants assert access was limited to the shoulder season on either end of the winter months. Defs.' Undisp. Facts ¶¶ 41–42. In any event, in December 1999, National Park Ranger Scott Emmerich sent McFarland an email message informing him that "a policy decision ha[d] been made that no one will drive park roads once they are closed to the public." AR at 36. Emmerich indicated the decision was made to protect wildlife and public recreational opportunities. AR at 36.

Prior to the Park Service's policy decision, McFarland had informed the Park Service he intended to live on the Property year-round with his wife and three children. AR at 29, 36. After being informed he could not access the Property by motorized means during the winter, McFarland filed an application with the Park Service for a special use permit. AR at 46–47. Specifically, McFarland requested permission to:

1. Use a vehicle to drive the 3.2 mile distance between our home and the Polebridge Ranger Station at such times as the Park Service has otherwise closed the road to public access by vehicle.
2. The freedom to unlock the gate and gain access to our property at any time without further assistance from Park Service personnel.
3. In the event the road conditions make it unsafe or unpractical to drive, I want to use a snowmobile for the limited purpose of traveling the short distance to my home.
4. Provide access for our guests to come and visit or stay at our home. Such access shall be in the same matter as requested above.

AR at 14–17. The permit request was denied in a January 24, 2000 letter from Acting Superintendent of Glacier National Park John Shireman. AR at 56. The letter indicated the special use permit was denied in accordance with the Park Service's authority to close park areas to the public when "necessary for the maintenance of public health and safety, protection of environmental or scenic values, protection of natural or cultural resources, aid to scientific research, implementation of management responsibilities, equitable allocation and use of facilities, or the avoidance of conflict among visitor use activities." AR at 56; see also 36 C.F.R. 1.5(a). The letter stated the broad terms outlined in McFarland's request were not acceptable, but authorized McFarland to keep a snowmobile on the Property for use in medical emergencies. AR at 56. McFarland appealed the permit denial to the Deputy Regional Director of the Park Service on March 14, 2000. Pl.'s Undisp. Facts Ex. 23. Deputy Regional Director Mike Snyder subsequently affirmed the denial, approving of Shireman's conclusion that snowmobile use would interfere with winter recreational opportunities and negatively impact wildlife. Pl.'s Undisp. Facts Ex. 24.

McFarland subsequently filed suit, seeking to quiet title to an easement over Glacier Route 7. See Quiet Title Act, 28 U.S.C. § 2409a. McFarland claimed an easement by necessity, an easement implied from the Homestead Act, and an express easement under the terms of the Schoenberger land patent. McFarland also alleged the Park Service's denial of

his request for a special use permit should be set aside under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq. This Court originally dismissed McFarland's claims, concluding they were barred by the Quiet Title Act's twelve-year statute of limitations. The Ninth Circuit reversed and remanded the case back to this Court. *McFarland v. Norton*, 425 F.3d 724, 728 (9th Cir.2005) (concluding statute of limitations had not run because quiet title claim did not accrue until the Park Service denied McFarland access to Glacier Route 7 in 1999). Both parties have moved for summary judgment on all of McFarland's claims.

## III. Analysis

### A. Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248, 106 S.Ct. 2505. If there is no genuine issue of material fact, the court must determine whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences are drawn in its favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

Summary judgement is a particularly appropriate tool for resolving claims challenging agency action under the APA. *See Occidental Eng'g Co. v. INS*, 753 F.2d 766, 770 (9th Cir.1985). When a district court is reviewing the decision of an administrative agency, the administrative agency acts as the fact finder and the district court's role is limited to deciding the legal question of whether the agency could reasonably have found the facts as it did. *Id.*

### B. Easement by Necessity

 McFarland first claims an easement by necessity over Glacier Route 7. "An easement by necessity is created when: (1) the title to two parcels of land was held by a single owner; (2) the unity of title was severed by a conveyance of one of the parcels; and (3) at the time of severance, the easement was necessary for the owner of the severed parcel to use his property." *Fitzgerald Living Trust v. United States*, 460 F.3d 1259, 1266 (9th Cir.2006).[1] To find an easement by necessity, the necessity must exist both at the time of severance of unity of title and at the time of exercise of the easement. *Id.* The easement expires once the necessity ceases to exist. *Id.* McFarland bears the burden of proving each element of an easement by necessity. *See Barnes v. Babbitt*, 329 F.Supp.2d 1141, 1148–49 (D.Ariz.2004).

Defendants do not dispute that unity of title existed and was severed in 1916 when the United States conveyed the Property to Schoenberger. Instead, Defendants argue (1) an easement by necessity cannot exist against the United States and (2) an easement is not necessary here because McFarland has two alternative routes of access to the Property.

---

1. Because McFarland claims an easement over lands owned by the United States and no federal statute makes state or local law applicable, federal law governs McFarland's easement claims. *See Superior Oil Co. v. United States*, 353 F.2d 34, 37 n. 4 (9th Cir.1965).

### 1. Easement by Necessity Against the United States

Defendants cite *Leo Sheep Co. v. United States*, 440 U.S. 668, 99 S.Ct. 1403, 59 L.Ed.2d 677 (1979), and a 1980 United States Attorney General Opinion in support of their assertion that an easement by necessity cannot lie against the United States. *See* Rights–of–Way Across National Forests, 43 Op. Att'y Gen. 243, 255 (1980). *Leo Sheep*, however, does not support Defendants' proposition. *Leo Sheep* addressed whether the United States can obtain an easement over privately-owned land by necessity, and concluded it cannot because the government has the power to take an easement by eminent domain. 440 U.S. at 679–80, 99 S.Ct. 1403. *Leo Sheep* did not address whether private landowners can obtain an easement by necessity against the United States. Additionally, no court of appeals has held, as a matter of law, that an easement by necessity cannot lie against the United States. In fact, in *Fitzgerald*, the Ninth Circuit expressly left this question open. 460 F.3d at 1266. Finally, under this Court's precedent, an easement by necessity can be asserted against the United States. *Mont. Wilderness Assoc. v. U.S. Forest Serv.*, 496 F.Supp. 880, 885 (D.Mont.1980). McFarland therefore can obtain an easement by necessity against the United States if he satisfies the required elements.

### 2. Alternative Access

An easement by necessity does not exist if the claimant has another mode of access to his property. *Mackie v. United States*, 194 F.Supp. 306, 308 (D.Minn. 1961); *see also Fitzgerald*, 460 F.3d at 1266. Defendants claim two alternative routes of access to the Property defeat necessity in this case. Defendants first claim McFarland can access his property via Flathead County Road 486. Flathead County Road 486 runs along the west side of the North Fork of the Flathead River outside the boundaries of Glacier National Park. Defs.' Undisp. Facts ¶ 10. Defendants assert the Property can be accessed in the winter by driving Flathead County Road 486 to an access road down to Flathead River. Defs.' Undisp. Facts ¶ 11. According to Defendants, McFarland can then ski, canoe, or wade across the river to access the Property. Defs.' Undisp. Facts ¶ 11. In response, McFarland claims use of this alternative route would require him to cross private lands held by third-parties. Defendants do not dispute this fact. An easement by necessity is not defeated by a grantee's ability to access a public road over a third-party's property. *Fitzgerald*, 460 F.3d at 1266. This alternative route therefore does not defeat McFarland's claim of necessity.

Defendants also claim an easement is not necessary because the Park Service allows McFarland to access the Property over Glacier Route 7 year-round, via motorized means for three seasons of the year and non-motorized means during the winter. Defendants note McFarland has accessed the Property in winter on previous occasions by skiing or snowshoeing along Glacier Route 7 from the Polebridge Ranger Station. Defs.' Undisp. Facts ¶ 38. The 3.2 mile trip, with skis and pulling a sled, takes between one hour and one-and-a-half hours. Defs.' Undisp. Facts ¶ 38. If McFarland's children accompany him on the trip, it takes approximately three hours. Pl.'s Statement of Genuine Issues ¶ 38. McFarland contends this alternative route places a significant burden on his right to enjoy his land and is not reasonable.

Although accessing the Property by skis or snowshoes may be inconvenient, it defeats any necessity in this case. To obtain an easement by necessity, the claimant must demonstrate strict necessity; it is not sufficient to show other means

of access are merely inconvenient. *Mackie,* 194 F.Supp. at 308; *see also Fitzgerald,* 460 F.3d at 1267 (concluding statutory right to access that is adequate to secure reasonable use and enjoyment of property defeats necessity); *United States v. Jenks,* 129 F.3d 1348, 1354 n. 3 (10th Cir.1997). McFarland may access the Property via Glacier Route 7 by foot, skis, snowshoes, or horseback during winter months. The 3.2 mile trip is much less burdensome than the alternative mode of access found to defeat necessity in *Mackie v. United States,* 194 F.Supp. 306, 308 (D.Minn.1961). In *Mackie,* the court determined an alternate route which required the property owner to leave his automobile eight miles from his residence, walk one and one-half miles to a lake, and then travel by boat across three lakes with short portages between the lakes defeated any necessity for an easement. *See also Jenks,* 129 F.3d at 1354 n. 3 (10th Cir.1997) (concluding access on road via four-wheel drive vehicle, although difficult, defeated necessity). Because motorized access via Glacier Route 7 during the winter is not strictly necessary for McFarland to access the Property, McFarland's claim to an easement by necessity fails.

 Even if McFarland were entitled to an easement by necessity, the scope of that easement would not be unlimited. *Leo Sheep,* 440 U.S. at 680 n. 15, 99 S.Ct. 1403 ("The scope of [an easement by necessity] embodies the best judgment of the court as to what is reasonably essential to the land's use." (citation omitted)). The scope of any easement would first be limited by the needs of the servient estate. *Soltis v. Miller,* 444 Pa. 357, 282 A.2d 369, 370 (1971); 25 Am.Jur.2d § 80. In this case, the servient estate, a portion of Glacier National Park commonly referred to as Big Prairie, is maintained by the Park Service for the enjoyment of the general public. Defs.' Undisp. Facts ¶ 1. The area is accessed by "20 people per day on the weekends and approximately four people per day during the weekdays" in the winter. Defs.' Undisp. Facts ¶ 39; Pl.'s Statement of Genuine Issues ¶ 39. Permitting McFarland to access the Property by motorized means would interfere with the winter recreational activities of these members of the general public. Defs.' Undisp. Facts ¶ 39, Ex. 28.

Any easement McFarland possessed would also be subject to reasonable regulation by the Park Service. U.S. Const. Art. IV, § 3, cl. 2 (granting Congress authority and responsibility to manage federal lands); *Hale v. Norton,* 437 F.3d 892, 894 (9th Cir.2006) (determining the existence of a right-of-way over national park land does not shield an inholder from reasonable regulation by the Park Service); *Adams v. United States,* 3 F.3d 1254, 1259 (9th Cir.1993) (observing preservation of land is an important consideration where the United States owns the servient estate for the benefit of the public); *see also Fitzgerald,* 460 F.3d at 1263 (noting government has authority to impose some regulations on the use of roads regardless of any common law easements held by private individuals). Congress has charged the Park Service with the task of

> promot[ing] and regulat[ing] the use of the ... national parks ... by such means and measures as conform to the fundamental purpose of the said parks ... which purpose is to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.

16 U.S.C. § 1. The Park Service closes Glacier Route 7 to motorized vehicles in the winter for reasons of safety, environmental resource protection, facilitation of winter recreational opportunities, and pro-

tection of the road from damage. Defs.' Undisp. Facts ¶ 36. Big Prairie is one of the few prairie savanna habitats west of the Continental Divide. Defs.' Undisp. Facts ¶ 21. It is home to grey wolfs, grizzly bears, bald eagles, coyote, moose, and many other species. Defs.' Undisp. Facts ¶¶ 21–25. Permitting McFarland to access the Property by motorized means during the winter would adversely impact the wildlife of Big Prairie. Defs.' Undisp. Facts ¶¶ 45, 47–49. Additionally, Park Service regulation of access on Glacier Route 7 serves to protect winter recreational opportunities for the general public in the Big Prairie area. As discussed above, permitting McFarland to access the Property by motorized means during the winter would significantly diminish these opportunities. The Park Service currently permits McFarland to access the Property along Glacier Route 7 by non-motorized means and egress by snowmobile in emergency situations during the winter. Even if McFarland possessed an easement by necessity, the access currently permitted by the Park Service would be reasonable in light of its responsibility to protect the resources in Glacier National Park.

In sum, McFarland does not possess an easement by necessity over Glacier Route 7 because he has an alternative route of access to the Property. McFarland can walk, ski, snowshoe, or ride on horseback along Glacier Route 7 to reach the Property. Although this means of access may be inconvenient, it defeats McFarland's claim of necessity. Alternatively, even if McFarland were entitled to an easement by necessity over Glacier Route 7, the easement could be limited in scope to the access currently permitted by the Park Service, i.e., access by non-motorized means and egress by snowmobile in emergency situations during the winter and motorized means during the remainder of the year. National park lands surrounding the Property provide unique winter recreational op-

portunities for the general public. This land also provides one of the few prairie savanna habitats west of the Continental Divide. Prohibiting the year-round motorized access McFarland seeks is reasonably necessary to protect wildlife in the area and facilitate winter recreational opportunities for the general public. Accordingly, Defendants are entitled to summary judgment on McFarland's easement by necessity claim.

## C. Easement Implied Under the Homestead Act of 1862

██ McFarland alternatively asserts the Homestead Act of 1862 granted an implied easement for access across federal lands to lands patented under the Act. This argument, however, was foreclosed by *Fitzgerald Living Trust v. United States*, 460 F.3d 1259 (9th Cir.2006), decided by the Ninth Circuit after the parties' cross-motions for summary judgment were fully briefed in this case. In *Fitzgerald*, owners of property completely surrounded by the Sitgreaves National Forest brought suit against the United States under the Quiet Title Act, seeking an easement to access their property. 460 F.3d at 1261–62. The property owners were successors in title to land granted by President Wilson under the Homestead Act in 1920. *Id.* at 1261. The owners argued, *inter alia*, that they possessed an easement implied from language contained in the Homestead Act. *Id.* at 1265. The Ninth Circuit adopted the Tenth Circuit's reasoning in *United States v. Jenks*, 129 F.3d 1348 (10th Cir.1997) in concluding that an easement could not be implied from the Homestead Act. *Fitzgerald*, 460 F.3d at 1265. The Ninth Circuit determined that although "the Homestead Act contemplated an inholder's access to his property over public lands ... the access across government lands implied into the Homestead Act is not an implied easement." *Id.* The court left open the

possibility that an implied license to use public lands might exist under the Homestead Act. *Id.* McFarland, however, does not assert he possesses an implied license to use Glacier Route 7.[2] Rather, he seeks to quiet title to a vested property right, a right that does not exist under the Homestead Act. *See id.* Defendants therefore are entitled to summary judgement on McFarland's implied easement claim.

### D. Express Easement Under the Schoenberger Patent

■ McFarland alternatively claims the 1916 land patent issued by President Wilson, which conveyed the Property to Schoenberger, granted an express easement over Glacier Route 7. In particular, McFarland points to the language in the land patent conveying the Property, "with the appurtenances thereof." McFarland contends conveyance of appurtenances includes all things necessary for the enjoyment of the land, and in particular, an easement for access. This argument, however, was also foreclosed by *Fitzgerald.* The property owners in *Fitzgerald* also claimed an express easement over federal lands based on appurtenances language in the land patent conveying property to their predecessor in title. *Id.* at 1267. The Ninth Circuit rejected this argument, concluding the language "with the appurtenances thereof" lacks the intent and specificity necessary to create an express easement. *Id.* The court did note that the word "appurtenances" carried any existing easements. *Id.* McFarland, however, has not alleged an easement existed over Glacier Route 7 prior to conveyance in the 1916 land patent. Therefore, McFarland does not possess an express easement over Glacier Route 7, and Defendants are entitled to summary judgment on this claim.

### E. APA Claim

McFarland also appeals the Park Service's denial of his request for a special use permit. McFarland applied for a permit to access his property by automobile via Glacier Route 7 in the winter when the road is otherwise closed to the public. AR at 46. McFarland also requested permission to access the Property by snowmobile when road conditions make it unsafe or impractical to drive a vehicle. AR at 46. The Park Service denied McFarland's request, citing its authority to close areas of the park to the public to protect health and safety, protect wildlife and natural resources, and avoid conflicts among visitor use activities. AR at 56–57. This decision was affirmed following McFarland's appeal. Pl.'s Undisp. Facts Ex. 24.

■ Pursuant to the APA, a district court may set aside an agency decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Review under this standard is narrow. *U.S. Postal Serv. v. Gregory,* 534 U.S. 1, 6–7, 122 S.Ct. 431, 151 L.Ed.2d 323 (2001). A district court may not substitute its judgment for that of the agency. *Id.* at 7, 122 S.Ct. 431. An agency decision can only be reversed if the agency relied on impermissible factors, entirely failed to consider an important factor, offered an explanation for its decision that runs counter to the evidence presented, or made a decision that is so implausible it could not be ascribed to a difference in view or the product of agency expertise. *Safari Aviation Inc. v. Garvey,* 300 F.3d 1144, 1150 (9th Cir.2002). Although the district court's review is narrow, it must be searching and careful. *Marsh v. Or. Natural Res. Council,* 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (9th Cir.1989). The district

---

**2.** McFarland abandoned his implied license claim in his Amended Complaint.

court must, for example, ensure that the agency has articulated a rational connection between the facts found and the conclusion made. *Sierra Club v. EPA,* 346 F.3d 955, 961 (9th Cir.2003).

 As an initial matter, Defendants claim McFarland's APA claim is barred because the Quiet Title Act is the exclusive means by which an adverse claimant can challenge the United States' title to real property. *See Block v. North Dakota ex rel. Bd. of Univ. and Sch. Lands,* 461 U.S. 273, 286, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983). McFarland's APA claim, however, does not assert title to an easement over Glacier Route 7. McFarland seeks an easement in his Quiet Title Act claims. McFarland's APA claim challenges the Park Service's denial of his request for a special use permit. In his special use permit application, McFarland sought permission to use a vehicle and snowmobile to access the Property; he was not seeking title to an easement. The APA therefore does provide a cause of action for McFarland to challenge the Park Service's permit denial.

McFarland identifies three reasons for reversing the Park Service's decision. First, he claims denial of the permit is contrary to the express language of the Glacier Park Act and the Park Service's long-standing interpretation of that Act. Second, McFarland argues denial of the permit was arbitrary and capricious because the Park Service failed to articulate a satisfactory explanation for its decision and failed to consider an important factor. Finally, McFarland contends denial of the permit was contrary to law because the Park Service did not comply with its own regulations regarding road closures.

### 1. The Glacier Park Act

 The Glacier Park Act provides, in relevant part, "[n]othing herein contained shall affect any valid claim, location, or entry existing under the land laws of the United States before May 11, 1910, or the rights of any such claimant, locator, or entryman to the full use and enjoyment of his land." 16 U.S.C. § 161. McFarland argues this provision guarantees him unrestricted access to the Property as necessary for the full use and enjoyment of the land because McFarland's predecessor in interest established a homestead before 1910. McFarland's reading of the provision, however, is inconsistent with its plain language. The clear intent of the provision was to ensure that the creation of Glacier National Park did not extinguish existing homestead entries within the boundaries of the Park that had not yet been perfected. In fact, it is this provision that allowed McFarland's predecessor in title to perfect his title to the Property in 1916, after Glacier National Park was established.

 As an alternative to the above argument, McFarland claims, even if the Glacier Park Act did not address inholder access rights, the Park Service has historically interpreted the Act to protect inholder rights and cannot now abandon its interpretation. McFarland contends evidence of the Park Service's long-standing interpretation of the Act exists in the 1985 Land Protection Plan. AR at 244–334. An agency's interpretation of a statute that conflicts with the agency's earlier interpretation is given less deference than a consistently held interpretation. *Young v. Reno,* 114 F.3d 879, 883 (9th Cir.1997) (quotation omitted). The sections of the Land Protection Plan cited by McFarland, however, can hardly be said to constitute the Park Service's interpretation of the Glacier Park Act. In fact, most of McFarland's cites are taken completely out of context and reassembled in deviation of their original intent. This restructuring is especially egregious in this case where the

document McFarland relies on explicitly states the Park Service's interpretation of the relevant Glacier Park Act provision. The Land Protection Plan notes the purpose and intent of the relevant provision

is to clarify that the establishment of the park did not nullify the right for holders of unpatented claims and homesteads to receive patent to their claimed lands. Furthermore, they can continue to use these lands even though patent had not yet been granted. It does not limit the authority of the National Park Service to acquire lands within the park boundaries or the right to regulate land use. Protection of resource values and the right of the public to enjoy the park must receive priority if there is a conflict.

AR at 258. This interpretation is consistent with the plain language of the Glacier Park Act, and the Park Service's denial of McFarland's permit is consistent with this interpretation. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). McFarland thus has not demonstrated the Park Service's decision was contrary to law.

**2. Arbitrary and Capricious**

■ McFarland next argues the Park Service's permit denial was arbitrary and capricious. He claims the Park Service failed to articulate a satisfactory explanation for its decision because the letter denying the permit listed reasons why the general public's use of national parks could be restricted, but failed to explain why McFarland's right to access the Property was restricted. McFarland further contends the denial of his administrative appeal only addressed his request for snowmobile access, not his request for vehicular access. Finally, McFarland argues the Park Service failed to consider his claim to an easement in denying the permit.

Although the letter denying McFarland's request for a special use permit is neither lengthy nor detailed, the Park Service's decision was not arbitrary and capricious. In denying the permit, the Park Service relied on its authority, as conveyed to McFarland in prior correspondence, to protect park resources and to provide for visitor enjoyment of those resources. AR at 56. The prior correspondence referenced in the permit denial and the remainder of the administrative record provide ample evidence to support the Park Service's decision. In particular, in an email message informing McFarland of the Park Service's policy decision to close roads to inholders at the same time they are closed to the general public, ranger Scott Emmerich explained the decision was made to protect wildlife and public recreation values. AR at 36. In a December 17, 1999 letter to McFarland explaining that any request for a special use permit would likely be denied, Assistant Superintendent Charles Farabee, Jr. explained the decision to close the road to vehicles and snowmobiles was based on public safety, resource protection, and the avoidance of conflict among visitor use activities. AR at 38. Farabee further explained exceptions would not be made for inholders unless access rights were clearly stated in a deed or right-of-way easement. AR at 38–39. The letter referenced the 1975 decision, made following completion of an Environmental Assessment and public comment period, to ban snowmobiles. AR at 39. The letter also referenced the 1985 Land Protection Plan, which, according to the letter, provides specific information about the resource values in the Big Prairie area. AR at 39. The referenced pages of the Land Protection Plan in turn discuss the critical wildlife habitat the Big Prairie area provides. AR at 281. These citations and the remainder of the administra-

tive record provide ample support for the Park Service's decision.

Additionally, the Deputy Regional Director's failure to address McFarland's request for vehicular access in denying the administrative appeal does not render the Park Service's denial of the permit arbitrary and capricious. Deputy Regional Director Snyder refused to overturn the permit denial, observing snowmobile use in Big Prairie would create visitor use conflicts with cross country skiers and snowshoers seeking quiet and solitude and negatively impact grizzly bear, lynx, and gray wolf. Pl.'s Undisp. Facts Ex. 24. Snyder did not expressly discuss the effect of vehicular access. Nevertheless, it is clear from the original permit denial that vehicular access was denied for the same reasons snowmobile access was denied. Snyder's failure to explicitly set forth these reasons in his letter denying the appeal does not render the Park Service's decision arbitrary and capricious.

Finally, the Park Service's failure to consider McFarland's claims to an easement does not require reversal of the agency's decision. The existence of an easement along a road is arguably a factor the Park Service should consider in determining whether to grant the alleged easement-holder a special use permit to access the road. Cf. Fitzgerald, 460 F.3d at 1263–64 (noting existence of a common law easement is relevant to determination of whether proposed Federal Land Policy Management Act easement is reasonable). In fact, the Park Service recognized as much in this case when it noted in denying McFarland's permit request that a thorough legal review of McFarland's easement claim was being conducted by the Department of the Interior Solicitors Office. AR t 56. McFarland, however, did not await the outcome of this review before filing suit. In any event, because this Court has determined McFarland does not possess an easement along Glacier Route 7, the Park Service's failure to consider the existence of an easement in denying the permit does not render its decision arbitrary and capricious.

### 3. Road Closure Regulations

 McFarland finally argues denial of the permit was contrary to law because it violated Park Service regulations. McFarland cites 36 C.F.R. § 1.5(b), which requires any "closure, designation, use or activity restriction or condition ... that will result in significant alteration in the public use pattern of the park area ... to be published as rulemaking in the Federal Register." McFarland argues the 1989 and 1999 Compendiums, which provide for the closure of all Park roads seasonally by snow, are invalid because they were not subject to required rulemaking procedures in accordance with this regulatory provision. McFarland's challenge to the 1989 and 1999 Compendiums, however, represents an entirely new APA claim not pled in his Amended Complaint. McFarland's Amended Complaint challenges the denial of his application for a special use permit; it does state a claim challenging the Park Service's failure to follow proper rulemaking procedures in issuing the Compendiums. McFarland cannot assert this claim at this late date. See Pickern v. Pier 1 Imports, Inc., 457 F.3d 963, 968–69 (9th Cir.2006). Because McFarland has not demonstrated the Park Service's denial of his request for a special use permit was arbitrary, capricious, an abuse of discretion, or contrary to law, Defendants are entitled to summary judgment on McFarland's APA claim.

### IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (dkt # 140) is GRANTED.

Plaintiff's Motion for Summary Judgment (dkt # 134) is DENIED.