# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 23, 2014   Decided October 28, 2014

No. 13-1068

SECURITYPOINT HOLDINGS, INC.,
PETITIONER

v.

TRANSPORTATION SECURITY ADMINISTRATION,
RESPONDENT

———

On Petition for Review of an Order of
the Transportation Security Administration

———

*M. Roy Goldberg* argued the cause for petitioner. With him on the briefs were *Don J. Pelto* and *Nathaniel Bruno*.

*John S. Koppel*, Attorney, U.S. Department of Justice, argued the cause for respondent. With him on the brief were *Stuart F. Delery*, Assistant Attorney General, *Ronald C. Machen, Jr.*, U.S. Attorney, and *Mark B. Stern*, Attorney.

Before: HENDERSON and SRINIVASAN, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

*Circuit Judge* HENDERSON concurs in the judgment.

WILLIAMS, *Senior Circuit Judge*: Petitioner SecurityPoint Holdings, Inc. seeks review of changes made by the Transportation Security Administration ("TSA") to a program involving advertisements at airport security checkpoints. SecurityPoint claims that TSA made the changes in violation of SecurityPoint's First Amendment rights, specifically in retaliation for SecurityPoint's having sued TSA for alleged infringement of a patent. It also argues that TSA's explanation for persisting in the change, in the face of SecurityPoint's arguments that the change was unnecessary and self-defeating for TSA, failed to satisfy the minimum requirements of reasoned decisionmaking. Because we agree with the latter claim, we need not reach the First Amendment issue; TSA's response to our vacatur and remand may either wholly or partially moot the First Amendment claim (by acceding in whole or in part to SecurityPoint's position), or materially alter the context for the First Amendment claim by clarifying the reasons for TSA's decision.

\* \* \*

TSA administers the "screening of all . . . property . . . that will be carried aboard a passenger aircraft." 49 U.S.C. § 44901(a). To perform this function, it operates airport security checkpoints where passengers place personal belongings into bins that move by conveyor belt through an X-ray machine. TSA offsets some of the operating expenses for these checkpoints through a so-called "Bin Advertising Program." Under the program, private contractors assume the costs of providing and maintaining certain checkpoint equipment—bins, wheeled carts to transport the bins, and tables—in exchange for the right to sell advertisements to be displayed inside the bins. Participating airports execute a Memorandum of Understanding ("MOU") with TSA; they then contract with private companies to obtain the equipment subject to the MOU's terms. Once TSA has adopted a new

MOU template, it requires all participating airports entering into new contracts under the program to use that template. Indeed, SecurityPoint contends that TSA has tried to muscle airports into modifying existing MOUs under which they previously entered into contracts with SecurityPoint. The advertising revenues, though shared by the airport operators and private companies, relieve TSA of the expense of supplying the bin-related equipment.

Petitioner SecurityPoint has contracted with airports as part of the Bin Advertising Program since its inception in 2007. It holds a patent covering some of the equipment and methods used in the program. In 2011, it sued TSA for infringement of that patent at airports with which SecurityPoint had no agreement. See First Am. Compl., *SecurityPoint Holdings, LLC v. United States*, 11-cv-268 (Ct. Fed. Cl., filed Aug. 30, 2011); see also *Advertising Trays for Security Screening*, U.S. Patent No. 6,888,460 (filed Jul. 2, 2003). That case remains pending before the Court of Federal Claims, with a trial date set for June 2015. See *SecurityPoint Holdings, LLC v. United States*, 11-cv-268 (Ct. Fed. Cl., Sept. 5, 2014) (Scheduling Order).

In August 2012 TSA modified the Bin Advertising Program, amending the MOU template to require participating airports to indemnify TSA from all liability for intellectual property claims related to the checkpoint equipment. TSA also changed the template to provide that, on cancellation of an agreement between an airport and a private company, TSA would retain the right to use the checkpoint equipment as well as a license to all intellectual property necessary for such use.

SecurityPoint opposed these changes, writing to TSA's Chief Counsel, Francine Kerner, in December 2012, and again in January 2013, requesting that TSA "cease and desist from requiring airports to agree to the new MOU language." It

argued that airports would not sign MOUs that subjected them to an obligation to indemnify TSA for intellectual property claims, so that TSA would be killing the goose that laid the golden eggs of reduced costs for checkpoint screening. And the indemnification was unnecessary, as SecurityPoint's contracts gave TSA an implicit license to use the relevant intellectual property at the airports where such agreements were in effect. Ms. Kerner denied the request in a letter dated January 18, 2013. This petition for review followed.

\* \* \*

The government does not contest jurisdiction. Nonetheless, as we have an independent obligation to be sure of subject-matter jurisdiction, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006), and as it is not self-evident here, we need to resolve it.

Under 49 U.S.C. § 46110(a), this court has jurisdiction to review TSA "order[s]" issued "in whole or in part under" Subtitle VII, Part A of Title 49, which encompasses passenger screening and similar security measures under 49 U.S.C. §§ 44901 *et seq*. We have understood "order" in § 49110(a) to mean an order as defined in the Administrative Procedure Act, 5 U.S.C. § 551(6), namely, "the whole or a part of a final disposition . . . of an agency in a matter other than rulemaking" and "final" in the ordinary sense that it "mark[s] the consummation of the agency's decisionmaking process, and determine[s] rights or obligations or give[s] rise to legal consequences." *Safe Extensions, Inc. v. FAA,* 509 F.3d 593, 598 (D.C. Cir. 2007) (internal quotation marks omitted); see also *City of Dania Beach, Fla. v. FAA*, 485 F.3d 1181, 1187-88 (D.C. Cir. 2007); *Vill. of Bensenville v. FAA*, 457 F.3d 52, 68 (D.C. Cir. 2006).

We hold that Ms. Kerner's letter rejecting SecurityPoint's request is a reviewable "order." It is evidently the "consummation" of TSA's decisionmaking process regarding SecurityPoint's contention that it should abandon the challenged alterations of the MOU language. The letter "give[s] rise to legal consequences" by confirming that participating airports will be subject to TSA's new mandatory MOU language and thereby affects SecurityPoint's ability to contract with those airports. See *Safe Extensions,* 509 F.3d at 598 (holding that an FAA "advisory circular" was reviewable under 49 U.S.C. § 46110(a) where it "effectively . . . bar[red] manufacturers like [petitioner] from selling their products to airports"). Accordingly, this court has jurisdiction under 49 U.S.C. § 46110(a).

\* \* \*

We review Ms. Kerner's letter under the APA's familiar arbitrary and capricious standard. An agency's action is arbitrary and capricious if it has "entirely failed to consider an important aspect of the problem" it faces. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Relatedly, when an agency denies a request, it must (subject to exceptions inapplicable here) provide "a brief statement of the grounds for denial." 5 U.S.C. § 555(e). The agency's statement "must be one of 'reasoning'; it must not be just a 'conclusion'; it must 'articulate a satisfactory explanation' for its action." *Butte Cnty., Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) (quoting *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 737 (D.C. Cir. 2001)). Ms. Kerner's letter fails to satisfy these basic requirements.

SecurityPoint's letters contended, among other things, that the new indemnification provision would undermine the cost-saving Bin Advertising Program by making it difficult or

impossible for airports to participate. SecurityPoint characterized the indemnity provision as "a classic 'poison pill' because airports will not, and indeed cannot, agree to it." In support of that proposition it claimed ("on information and belief") that the staff at Lambert-St. Louis International Airport had said that they didn't believe the airport "could possibly comply with the new MOU language." It recounted that Boston Logan International Airport had told SecurityPoint that the new language "was not something they can agree to," and had then ceased negotiating. SecurityPoint asserted essentially the same story for Hartsfield-Jackson Atlanta International Airport. It argued, indeed, that TSA knew perfectly well that airport operators were not going to agree "to such blanket indemnifications," effectively disabling SecurityPoint from securing additional commitments.

And SecurityPoint explicitly noted the adverse effects on TSA itself, saying that the new requirement would curtail a program that "avoids TSA having to fund the purchase of checkpoint furnishings." It suggested, moreover, that these self-inflicted wounds were unnecessary, as "TSA [has] had the benefit of an implied license to practice the invention covered by the . . . patent" at any airport covered by an agreement between SecurityPoint and the airport operator.

Ms. Kerner's response does not address these contentions. It offers no indication that she or anyone at TSA even considered the potential harms to the Bin Advertising Program, and thus to TSA, from insistence on the new provisions, such as the additional equipment costs that would shift back to the agency as a result.

Ms. Kerner's letter does note that fourteen airports have "entered into MOUs with TSA to participate in the Bin Advertising Program where SecurityPoint is the advertising broker" since SecurityPoint filed its lawsuit in 2011. But the

point is not at all responsive. To evaluate the effect of the new MOU terms on the Bin Advertising Program, one would obviously have to examine behavior *after* those terms were rolled out (August 2012), not after SecurityPoint started its infringement suit. It is uncontested that, since the relevant date, SecurityPoint "has not entered into a *single* contract with a new airport operator."

Instead of addressing SecurityPoint's contentions, Ms. Kerner's letter asserts that TSA modified the MOU in order to "protect itself from legal liability." Yet Ms. Kerner never even mentions SecurityPoint's observation that TSA had "the benefit of an implied license" at the airports where SecurityPoint had an agreement in effect, much less suggests some reason why such a license either would not be in effect or would not meet TSA's concerns.

Because Ms. Kerner's letter fails to provide any "basis upon which we could conclude that it was the product of reasoned decisionmaking" on this point, the agency has not fulfilled its statutory duty to provide a "brief statement of the grounds for denial" under 5 U.S.C. § 555(e). See *Tourus Records*, 259 F.3d at 737.

Nor is there anything in the record beyond Ms. Kerner's letter that would support TSA's decision. The agency now points to a single airport—Durango/La Plata County—which has executed an MOU including the new language. But, as SecurityPoint notes, the airport in question is "very small" and may not have appreciated the "impact" of the new MOU language. Without disparaging Durango, *de minimis non curat lex*.

Because TSA "failed to consider an important aspect of the problem" before it, its decision must be set aside as arbitrary and capricious. See *State Farm*, 463 U.S. at 43.

Accordingly, the court will vacate Ms. Kerner's letter and remand the case to the agency.

\* \* \*

Finally, both parties have also moved to supplement the record. In light of the disposition above, these motions are dismissed as moot.

\* \* \*

The petition for review is granted and TSA's order is

*Vacated and remanded.*