# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 10, 2016         Decided May 10, 2016

No. 15-1075

ELECTRONIC PRIVACY INFORMATION CENTER,
PETITIONER

v.

FEDERAL AVIATION ADMINISTRATION, ET AL.,
RESPONDENTS

———

On Petition for Review of an Order
of the Federal Aviation Administration

———

*Marc Rotenberg* argued the cause for the petitioner. *Alan Butler* and *Khaliah Barnes* were with him on brief.

*Abby C. Wright*, Attorney, United States Department of Justice, argued the cause for the respondents. *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, and *Michael S. Raab*, Attorney were with her on brief.

Before: HENDERSON, ROGERS and SRINIVASAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

2

KAREN LECRAFT HENDERSON, *Circuit Judge*: Petitioner Electronic Privacy Information Center (EPIC) seeks review of the decision of the Federal Aviation Administration (FAA) not to promulgate certain regulations. EPIC challenges both the FAA's dismissal of its petition for rulemaking and the FAA's omission of privacy provisions in the notice of proposed rulemaking (NPRM). Regarding its first challenge, EPIC is time-barred; on the second, EPIC's challenge is premature. Accordingly, we dismiss EPIC's petition for review.

I.

On February 14, 2012 the Congress enacted the FAA Modernization and Reform Act of 2012 (Act), Pub. L. No. 112-95, 126 Stat. 11 (codified at 49 U.S.C. § 40101 note). The Act was enacted to regulate, *inter alia*, "unmanned aircraft"—*i.e.*, drones.[1] Specifically, the Act directs the FAA to develop, within 270 days of enactment, "a comprehensive plan to safely accelerate the integration of civil unmanned aircraft systems into the national airspace system," including regulations to "implement the recommendations of the plan." Act § 332(a)(1), (b)(2). The Act prescribes certain safety considerations the plan must contain, including, *e.g.*, provisions to "ensure that any civil unmanned aircraft system includes a sense and avoid capability" and to implement "the best methods to enhance the technologies and subsystems necessary to achieve the safe and routine operation of civil unmanned aircraft systems." *Id.* § 332(a)(2). The Act is silent as to any privacy considerations.

---

[1] The Act defines "unmanned aircraft" as "an aircraft that is operated without the possibility of direct human intervention from within or on the aircraft." Act § 331(8).

On February 24, 2012 EPIC petitioned the FAA to promulgate privacy-specific drone regulations. Thirty-three months later, on November 26, 2014, the FAA denied the petition, stating that it was "dismissing [EPIC's] petition for rulemaking." Although a petition for review of an FAA order "must be filed not later than 60 days after the order is issued," 49 U.S.C. § 46110(a), EPIC did not file its petition until March 31, 2015—125 days after the dismissal.[2]

## II.

The FAA ended its November 26, 2014 letter denying EPIC's petition by "dismissing [the] petition for rulemaking in accordance with 14 CFR § 11.73." Letter from Lirio Liu,

---

[2] The FAA does not question EPIC's standing but we have an independent duty to satisfy ourselves of our Article III jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93 (1998). EPIC brought suit on its own behalf; therefore we assess its standing under the two-pronged organizational standing test, "ask[ing], first, whether" the agency's action or omission to act "injured the [organization's] interest" and second, "whether the [organization] used its resources to counteract that harm." *Equal Rights Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1140 (D.C. Cir. 2011).

Nonetheless, we "have leeway 'to choose among threshold grounds for denying audience to a case on the merits' because 'jurisdiction is vital only if the court proposes to issue a judgment on the merits.' " *Nat'l Ass'n of Clean Water Agencies v. EPA*, 734 F.3d 1115, 1161 (D.C. Cir. 2013) (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007)). Because EPIC's organizational standing *vel non* involves a fairly "arduous inquiry" and because there is an alternative and "straightforward" threshold ground for dismissal, *see Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587–88 (1999), we may proceed to the alternative ground.

4

Dir., Office of Rulemaking, FAA, to Marc Rotenberg, Exec. Dir., EPIC at 2 (FAA Letter). Despite the FAA's explicit dismissal, EPIC waited over 60 days to petition for review. EPIC now makes two arguments to excuse its tardiness. First, it contends that "reasonable grounds" justify its untimely petition. 49 U.S.C § 46110(a) ("court may allow the petition to be filed after the 60th day only if there are reasonable grounds"). In the alternative, EPIC argues that the FAA's February 23, 2015 NPRM constituted, in effect, the dismissal of its petition, triggering the 60-day clock. We find neither argument availing.

Because EPIC's arguments turn on the alleged inconsistencies in the FAA's letter, exposition thereof is necessary. FAA regulations require the Agency to respond to a "petition for rulemaking in one of . . . [five] ways," 14 C.F.R. § 11.73, two of which are relevant here. First, if the FAA has "begun a rulemaking project in the subject area of [the] petition," it "will consider [the] comments and arguments for a rule change as part of that project. [FAA] will not treat [the] petition as a separate action." *Id.* § 11.73(c). Second, if the FAA "determine[s] that the issues . . . identif[ied] in [the] petition may have merit, but do not address an immediate safety concern or cannot be addressed because of other priorities and resource constraints, [it] may dismiss [the] petition. . . . [Petitioners'] comments and arguments for a rule change will be placed in a database, which [the FAA] will examine when . . . consider[ing] future rulemaking." *Id.* § 11.73(e).

Read against the backdrop of its regulations, the FAA's letter does lack clarity. Although the letter contains language consistent with a section 11.73(e) dismissal, *see* FAA Letter at 1 ("[W]e have determined that the issue you have raised is not an immediate safety concern."), another statement more

closely aligns it with section 11.73(c), s*ee id.* at 1 ("[T]he FAA has begun a rulemaking addressing civil operation of small unmanned aircraft systems in the national airspace system. We will consider your comments and argument as part of that project."). EPIC argues that we should construe the ambiguity against the Agency and that it either provides reasonable grounds for delay—assuming that we believe the letter to represent "a final order," *see Vill. of Bensenville v. FAA*, 457 F.3d 52, 69 (D.C. Cir. 2006) (jurisdiction under 49 U.S.C. § 46110 is contingent on "a final order")—or establishes that the Agency's letter indicated it would consider EPIC's petition consistent with section 11.73(c). We need not determine whether the letter constitutes a final order/dismissal sufficient to start the 60-day clock because, under either argument, EPIC cannot prevail.

Regarding "reasonable grounds for delay," 49 U.S.C. § 46110(a), EPIC alleges that the FAA letter, if final, is at least "misleading." Pet'r Reply Br. 12. We have rarely found "reasonable grounds" under section 46110(a) and, when we most recently so found, the circumstances were plainly distinguishable. *See Safe Extensions, Inc. v. FAA*, 509 F.3d 593 (D.C. Cir. 2007). There, the FAA affirmatively misrepresented to the petitioner that the challenged order was to be revised. *See id.* at 603 ("[W]hen [petitioner's President] expressed [his] concerns to [the FAA] about how AC–42E dealt with [adjustable products], the FAA responded that [he] should wait until AC–42F comes out because the FAA was currently revising AC–42E." (alteration in original) (internal quotations omitted)). Because the Agency told the petitioner "to basically ignore" the order inasmuch as it "would be eliminated and replaced with" another, we reviewed its otherwise untimely challenge when the order was not in fact revised. *Id.* (internal quotations omitted). Moreover, EPIC's argument fails even under its preferred authority, a Ninth

Circuit decision. *Americopters, LLC v. FAA*, 441 F.3d 726 (9th Cir. 2006). In *Americopters*, the Ninth Circuit held that "an attempt to exhaust the wrong remedy is not" reasonable grounds for delay; so too with "procedural missteps . . . based on a misapprehension of the law." *Id.* at 734. Here—assuming the FAA's letter constitutes a final order—EPIC's error was a slightly different kind of procedural misstep. It assumed the letter did not finally dismiss its petition; instead, it should have assumed the opposite and filed protectively for judicial review within 60 days. With its alternative attempt to petition for review of the February 23, 2015 NPRM, EPIC "attempt[s] to exhaust the wrong remedy." *Id.* The NPRM stated that "privacy concerns have been raised about [drone] operations. . . . these issues are beyond the scope of th[e] rulemaking." *See Operation and Certification of Small Unmanned Aircraft Systems*, 80 Fed. Reg. 9544, 9552 (Feb. 23, 2015). But a challenge mounted under 49 U.S.C. § 46110 requires a "final order." *See Vill. of Bensenville*, 457 F.3d at 69. To be "final," the order "must mark the consummation of the agency's decisionmaking process" and "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotations omitted); *see also Ass'n of Flight Attendants-CWA, AFL-CIO v. Huerta*, 785 F.3d 710, 713 (D.C. Cir. 2015) (applying section 46110 review). Because an NPRM neither marks the "consummation of the agency's decisionmaking process" nor determines "rights or obligations" or imposes "legal consequences," it is unreviewable. *In re Murray Energy Corp.*, 788 F.3d 330, 334 (D.C. Cir. 2015) (quoting *Bennett*, 520 U.S. at 177–78).

In addition, EPIC contends that the FAA's conclusion that privacy is beyond the scope of the NPRM is *itself* a final reviewable "order," relying on *Agape Church, Inc. v. FCC*,

738 F.3d 397 (D.C. Cir. 2013). But *Agape Church* involved review of a final rule for consistency with an NPRM, *id.* at 400–02, not the non-finality of an NPRM. EPIC seems to contend that, because an agency's final rule must be a "logical outgrowth of its [NPRM]," *id.* at 411 (quoting *Covad Commc'ns Co. v. FCC*, 450 F.3d 528, 548 (D.C. Cir. 2006)), and because the FAA expressed its intent to omit privacy considerations in its final rule, EPIC need not wait for the latter. In so contending, EPIC asks "us to do something that . . . we have never done before." *Murray Energy*, 788 F.3d at 333. To allow review of an agency's intent *vel non*—as expressed only in an NPRM—to address a particular matter in a final rule would upset our settled law that "[w]e do not have authority to review proposed agency rules." *Id.* at 334.

For the foregoing reasons, EPIC's petition for review is dismissed.

*So ordered.*