# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

―――――

Argued March 10, 2016　　　　　Decided June 28, 2016

No. 15–1026

NATIONAL FEDERATION OF THE BLIND, ET AL.,
PETITIONERS

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION
AND ANTHONY FOXX,
RESPONDENTS

―――――

Consolidated with 15–5078

―――――

On Petition for Review of an Order
of the Department of Transportation and
on Petition for Writ of Mandamus
(1:14-cv-00085)

―――――

*Kevin D. Docherty* argued the cause for the petitioners. *Daniel F. Goldstein*, *Joseph B. Espo* and *Gregory P. Care* were with him on brief.

*Abby C. Wright*, Attorney, United States Department of Justice, argued the cause for the respondents. *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Michael S. Raab*, Attorney, *Paul M. Geier*, Assistant General Counsel for Litigation, United States Department of Transportation,

*Peter J. Plocki*, Deputy Assistant General Counsel for Litigation, *Joy K. Park*, Senior Trial Attorney, and *Blane A. Workie*, Assistant General Counsel for Aviation Enforcement and Proceedings, were with her on brief.

Before: HENDERSON, GRIFFITH and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LeCRAFT HENDERSON, *Circuit Judge*:   Petitioners National Federation of the Blind, Marc Maurer and Anil Lewis (collectively, NFB) challenge a rule issued by the United States Department of Transportation (DOT).   The rule requires that air carriers begin to purchase ticketing kiosks accessible to blind persons within three years of the rule taking effect so that 25 per cent of kiosks eventually will be blind-accessible.   After DOT issued its final rule, NFB filed a complaint in district court, challenging the rule because, among other reasons, it does not require air carriers to make *all* airport kiosks accessible to the blind.   The district court concluded that it lacked jurisdiction under 49 U.S.C. § 46110(a) because the rule is an "order" over which the court of appeals has exclusive jurisdiction.

Instead of dismissing NFB's complaint, however, the district court transferred the complaint to our court, re-styled as a petition for review.   NFB subsequently filed a notice of appeal—which we construed as a petition for a writ of mandamus—challenging the district court's conclusion that it lacked jurisdiction.   For the following reasons, we dismiss NFB's petition for review and deny its mandamus petition.

## I. BACKGROUND

The Air Carrier Access Act of 1986 (ACAA), Pub. L. No. 99-435, 100 Stat. 1080, prohibits air carriers from "discriminat[ing] against any otherwise qualified handicapped individual" on the basis of disability and grants the DOT Secretary the authority to promulgate regulations to "ensure non-discriminatory treatment of qualified handicapped individuals." *Id.* Using its authority, DOT issued a supplemental notice of proposed rulemaking in 2011 which proposed that *all* future automated ticketing kiosks purchased by certain domestic and foreign air carriers[1] be accessible to blind persons. *See* Nondiscrimination on the Basis of Disability in Air Travel: Accessibility of Web Sites and Automated Kiosks at U.S. Airports, 76 Fed. Reg. 59,307, 59,309 (Sept. 26, 2011). This requirement would have taken effect sixty days after promulgation of the final rule. *Id.* DOT nevertheless sought comment on a less-than-100-per-cent-accessible kiosk requirement and on the timing of implementation. *Id.* at 59,320.

In light of comments from both air carriers and advocacy groups for disabled passengers, DOT altered its approach. DOT now requires that covered air carriers purchase blind-accessible kiosks until at least 25 per cent of the automated kiosks at each location in domestic airports are

---

[1] Both the proposed rule and final rule apply to only United States airports having 10,000 or more enplanements per year. Nondiscrimination on the Basis of Disability in Air Travel: Accessibility of Web Sites and Automated Kiosks at U.S. Airports, 78 Fed. Reg. 67,882, 67,883 (Nov. 12, 2013) (Final Rule or Rule); Nondiscrimination on the Basis of Disability in Air Travel: Accessibility of Web Sites and Automated Kiosks at U.S. Airports, 76 Fed. Reg. 59,307, 59,309 (Sept. 26, 2011).

accessible.[2]  *See* Nondiscrimination on the Basis of Disability in Air Travel:  Accessibility of Web Sites and Automated Kiosks at U.S. Airports (Final Rule or Rule), 78 Fed. Reg. 67,882, 67,883 (Nov. 12, 2013).  The Final Rule became effective on December 12, 2013, and DOT provided a grace period wherein air carriers are not required to begin purchasing accessible kiosks until three years after the effective date of the Rule's implementation.  *Id.* at 67,882–83.

NFB filed its complaint in district court on January 22, 2014, seventy-one days after DOT issued the Final Rule. NFB sought declaratory and injunctive relief under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706, for DOT's alleged failure to comply with the ACAA.  NFB alleged that the 25 per cent accessibility requirement and three-year grace period violated the ACAA's ban on discrimination against disabled individuals and resulted from arbitrary and capricious decision-making.  The district court concluded that it lacked jurisdiction because the Final Rule is an "order" and 49 U.S.C. § 46110(a) vests the court of appeals with exclusive jurisdiction of DOT orders.  *Nat'l Fed'n of the Blind v. DOT*, 78 F. Supp. 3d 407, 414 (D.D.C. 2015). Although NFB filed its complaint seventy-one days after DOT issued the Final Rule—and, if construed to be a petition for review, was therefore time barred under the sixty-day filing deadline of section 46110(a)—the district court declined to dismiss the complaint and instead transferred the complaint to our court to determine whether the untimely filing was excusable.  *Id.* at 416.  NFB subsequently filed a notice of appeal on February 26, 2015, challenging the district court's no-jurisdiction conclusion.  We construed the notice of appeal

[2]  The Rule also requires that disabled passengers be given priority access to the accessible kiosks because not all kiosks will be accessible.  Final Rule, 78 Fed. Reg. at 67,883.

as a petition for a writ of mandamus and consolidated the two petitions for review.

## II.  ANALYSIS

NFB claims that a writ of mandamus should issue because the district court erred in its jurisdictional analysis.  NFB further argues that, even if the district court correctly determined that it lacked jurisdiction, NFB's untimely filing should be excused for reasonable grounds under section 46110(a) due to its confusion over the appropriate forum to challenge DOT's Final Rule.  On the merits, NFB asserts that we should either vacate the Rule because DOT failed to require that all future kiosks be accessible or remand the Rule for further review in light of other alleged flaws in DOT's decision-making process.  We do not reach NFB's arguments on the merits because we conclude that the district court lacked jurisdiction of NFB's complaint and that reasonable grounds do not excuse NFB's untimely filing.

### A.

NFB first requests that we issue a writ of mandamus because the district court erred in concluding that it lacked jurisdiction of NFB's complaint.  In reviewing a request for a writ of mandamus, "[t]he threshold question is whether the [d]istrict [c]ourt's . . . ruling constituted legal error.  If not, mandamus is of course inappropriate." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 756 (D.C. Cir. 2014).  "If the [d]istrict [c]ourt's ruling was erroneous," however, we then determine "whether that error is the kind that justifies mandamus." *Id.* at 756–57.  Because we agree with DOT that the district court did not err in concluding that it lacked jurisdiction, we need go no further.

Section 46110(a) provides that "a person disclosing a substantial interest in an *order* issued by the Secretary of Transportation . . . may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit." 49 U.S.C. § 46110(a) (emphasis added). Although section 46110(a) does not specify a finality requirement, we have interpreted section 46110(a) in light of the APA's definition of "order" at 5 U.S.C. § 551(6) to require that a DOT order must be final before it is appealable. *See SecurityPoint Holdings, Inc. v. TSA*, 769 F.3d 1184, 1187 (D.C. Cir. 2014). We have not, however, determined whether a final rule issued by DOT should be considered an order under section 46110(a).

According to NFB, the "normal default rule," Pet'rs' Br. 22 (quoting *Am. Petroleum Inst. v. SEC*, 714 F.3d 1329, 1332 (D.C. Cir. 2013)), is that the district court is the appropriate forum for review of agency rulemaking unless there is an applicable direct-review statute that "*specifically* gives the court of appeals subject-matter jurisdiction." *Id.* (emphasis in original) (quoting *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007)). NFB then points to language from *Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 598 (D.C. Cir. 2007), and from *SecurityPoint* to argue that we have previously relied on the APA to define "order" under section 46110(a). In NFB's view, because the APA both allegedly controls our interpretation of section 46110(a) and excludes rulemaking from its definition of "order," section 46110(a) does not vest exclusive jurisdiction of DOT rulemaking review in the court of appeals. In response, DOT asserts that our recent decision in *New York Republican State Committee v. SEC* (*NYRSC*), 799 F.3d 1126 (D.C. Cir. 2015)—which interpreted a nearly identical direct-review provision of the Investment Advisers Act, 15 U.S.C. § 80b-13(a), to include rulemaking under

"order," *see id.* at 1129–30—controls the case. We agree with DOT that *NYRSC* is dispositive.

Our precedent holding that "order" in certain direct-review statutes encompasses the review of rulemakings dates at least to our decision in *Investment Company Institute v. Board of Governors of the Federal Reserve System*, 551 F.2d 1270 (D.C. Cir. 1977). In *Investment Co.*, we reviewed the direct-review provision of the Bank Holding Company Act of 1956. *See id.* at 1275–78. In light of intervening Supreme Court decisions, we abandoned our earlier approach to the scope of "order" in direct-review statutes, concluding that " 'order' is interpreted to mean any agency action capable of review on the basis of the administrative record." *Id.* at 1278. We further explained that the term should not be limited by the APA definition of "order" because it "has several frequently utilized meanings which vary in scope, and it is therefore not surprising that different sections of the same statute might use the word in different ways." *Id.*; *see also City of Rochester v. Bond*, 603 F.2d 927, 933 n.26 (D.C. Cir. 1979) ("[C]ourts sometimes have construed 'order' for purposes of special review statutes more expansively than its definition in the APA, notably to permit direct review of regulations promulgated through informal notice-and-comment rulemaking.").

*NYRSC* built on the foundation established in *Investment Co.* Under the Investment Advisers Act of 1940, the Congress had provided for direct review of certain orders of the Securities and Exchange Commission (SEC) in the court of appeals: "Any person or party aggrieved by an order issued by the Commission . . . may obtain a review of such order in" an appropriate court of appeals. 15 U.S.C. § 80b-13(a). Like NFB, the *NYRSC* plaintiffs filed a complaint in district court seeking judicial review of SEC rulemaking and the district

court dismissed the complaint for lack of subject matter jurisdiction. *N.Y. Republican State Comm. v. SEC*, 70 F. Supp. 3d 362, 363–64 (D.D.C. 2014). We concluded that "order" in section 80b–13(a) included SEC rules. *NYRSC*, 799 F.3d at 1129–30. We explained that "[f]or nearly four decades, it has been blackletter administrative law that, absent countervailing indicia of congressional intent, statutory provisions for direct review of orders encompass challenges to rules." *Id*. at 1129. And, "absent contrary congressional intent, a statutory review provision creating a right of direct judicial review in the court of appeals of an administrative 'order' authorizes such review of any agency action that is otherwise susceptible of review on the basis of the administrative record alone." *Id.* at 1131. Because, in a rulemaking, "there is no need for judicial development of an evidentiary record," we saw "no gain from vesting jurisdiction in district courts" and noted that exclusive review in the court of appeals would eliminate the potential delay and expense of bifurcating review between the district and appellate courts.[3] *Id.*

Considering the breadth of the language and analysis in *NYRSC*, we can easily conclude that section 46110(a) includes review of DOT rulemakings. The language of the direct-review provisions in section 46110(a) and section 80b-13(a) are almost identical—permitting a party "disclosing a substantial interest in" ("aggrieved by") "an order issued by" the agency to "apply for review of" ("obtain a review of") the

---

[3] We also cited to multiple earlier examples of the proper application of the *Investment Co.* presumption to direct-review statutes—including the district court order before us—and explained that our Court's willingness to exercise jurisdiction on direct review *sub silentio* "is consistent with the recognized controlling force of *Investment Company*." *NYRSC*, 799 F.3d at 1131.

order in the court of appeals. *Compare* 49 U.S.C. § 46110(a), *with* 15 U.S.C. § 80b-13(a) (language in parentheses). And, beyond the close linguistic match between these two provisions, the analysis set forth in *NYRSC* compels the conclusion that section 46110(a) includes agency rules within the term "order," as there is no evidence that the Congress intended to vest the district court with jurisdiction of challenges to DOT rules. 799 F.3d at 1131. This conclusion is consistent with our precedent and that of our sister circuits that have endorsed, either *sub silentio* or through detailed analysis, the court of appeals's exclusive jurisdiction to review DOT or Federal Aviation Administration (FAA) rulemakings in the first instance.[4] *See, e.g.*, *Avera v. Airline Pilots Ass'n Int'l*, 436 F. App'x 969, 973 (11th Cir. 2011); *Nw. Airlines, Inc. v. Goldschmidt*, 645 F.2d 1309, 1313–14 (8th Cir. 1981) (reviewing rule pursuant to 49 U.S.C. § 1486(a) (1980), section 46110(a)'s predecessor statute); *Sima Prods. Corp. v. McLucas*, 612 F.2d 309, 312–14 (7th Cir. 1980) (same); *see also Safari Aviation Inc. v. Garvey*, 300 F.3d 1144, 1147 (9th Cir. 2002) (asserting jurisdiction of FAA rule without addressing scope of "order" in section 46110); *U.S. Air Tour Ass'n v. FAA*, 298 F.3d 997, 1012–13 (D.C. Cir. 2002) (same); *North Carolina v. FAA*, 957 F.2d 1125, 1127–28 (4th Cir. 1992) (same for section 1486(a)).

---

[4] The only case NFB identifies where a district court found jurisdiction of a challenge to an FAA or DOT rule under section 46110(a)—*Harrington v. Delta Air Lines, Inc.*, No. Civ. A. 04–12558–NMG, 2006 WL 1581752 (D. Mass. Feb. 21, 2006)—involved only a conclusory assertion of jurisdiction with little underlying analysis in an unpublished decision. *Id.* at *7 n.4 ("Because Class Plaintiffs challenge a rule, not an order, [section 46110(a)] appears to be inapplicable.").

NFB argues that our precedent, including *National Mining Ass'n v. DOL*, 292 F.3d 849, 856, 858–59 (D.C. Cir. 2002) (per curiam), *Watts*, *Safe Extensions* and *SecurityPoint*, supports its argument that "order" has a more restricted meaning than enunciated in *NYRSC*. We are unconvinced. *NYRSC* addressed *National Mining Ass'n* and *Watts* at length. *See NYRSC*, 799 F.3d at 1132–33. We distinguished *Watts* as limited to whether SEC's instruction to its employees not to respond to a testimonial subpoena was either "reviewable agency action, or only an ordinary litigation decision." *NYRSC*, 799 F.3d at 1132 (quotation marks omitted). Because the question facing us in *Watts* was "whether the agency acted in its sovereign lawmaking capacity or as a litigant," *Watts* had "no bearing" on the question addressed in *NYRSC*—or in this appeal. *NYRSC*, 799 F.3d at 1132. Regarding *National Mining Ass'n*, we noted that the direct-review provision at issue in that case "did not encompass orders issued by the agency, but rather a specific adjudicatory body . . . that had no authority to issue rules." *NYRSC*, 799 F.3d at 1133. Because of the limited scope of the power granted that body, *National Mining Ass'n* treated the review provisions in the Black Lung Benefits Act as wholly distinct from the review provisions at issue in *NYRSC*. *NYRSC*, 799 F.3d at 1133.

*SecurityPoint* and *Safe Extensions* are also distinguishable. In *Safe Extensions*, we were asked only to determine whether an FAA advisory circular met the finality requirement that we have read into section 46110(a) and whether the agency decision must "be accompanied by a record sufficient to permit judicial review" in order to qualify as a reviewable order. *See* 509 F.3d at 598–600 (internal quotation marks omitted). We held that the advisory circular was final and that alone made it a reviewable order. *Id. SecurityPoint* similarly involved an analysis of whether an

agency letter met section 46110(a)'s finality requirement. *See* 769 F.3d at 1187. Although *SecurityPoint* references the APA definition of "order" at 5 U.S.C. § 551(6), it turned only on the part of the APA definition of "order" requiring finality; it did not address the APA's further elaboration of "order"—namely, that "order" excludes a rulemaking. *See SecurityPoint*, 769 F.3d at 1187. But, as we recognized for the analogous direct-review provision in *NYRSC*, the language of section 46110(a) sets out an "order" requirement separate from the APA and therefore is not restricted to the APA definition of "order." *See NYSRC*, 799 F.3d at 1132. Thus, although the "normal default rule" may be that a challenge to agency action begins in district court, *Watts*, 482 F.3d at 505 (quotation marks omitted), section 46110(a)'s direct-review provision removes the Rule from the purview of the district court and places it within our exclusive jurisdiction. Because the district court did not err in concluding that it lacked jurisdiction of NFB's complaint, we deny NFB's petition for a writ of mandamus.

**B.**

NFB also argues that, even if the district court lacked jurisdiction, we should still reach the merits of its appeal in light of the district court's transfer of the complaint to our court as a petition for review. But NFB faces a significant procedural hurdle. Section 46110(a) states that a petition for review "must be filed not later than 60 days after the order is issued." Even assuming the filing of its complaint constituted a filing of a petition for review, NFB's petition was untimely—the Final Rule issued on November 12, 2013 and NFB filed its complaint on January 22, 2014—eleven days too late. NFB's only possible saving grace is that section 46110(a) includes a provision permitting our court to "allow the petition to be filed after the 60th day" but "only if there are

reasonable grounds for not filing by the 60th day." 49 U.S.C. § 46110(a). NFB claims that the uncertainty over whether "order" in section 46110(a) includes the Final Rule provides the reasonable grounds necessary to excuse their tardy filing. We disagree.

As recently discussed in our opinion in *Electronic Privacy Information Center v. FAA* (*EPIC*), No. 15-1075, 2016 WL 2640535 (D.C. Cir. May 10, 2016), we have "rarely found 'reasonable grounds' under section 46110(a)." *Id.* at *2. In one of those rare instances—*Safe Extensions*—the FAA, after issuing a circular to which the aviation industry objected, informed the industry that it was planning to draft a revised circular to respond to the industry's concerns. 509 F.3d at 603. The agency did not, however, issue a revised circular. *Id.* Because the agency's own statements "could have confused petitioner and others" about whether the order at issue would be revised, we concluded that the petitioner's late filing could be excused. *Id.* at 603–04. Similarly, in *Paralyzed Veterans of America v. Civil Aeronautics Board*, we found reasonable grounds for an untimely filing under a predecessor statute to section 46110(a). *See* 752 F.2d 694, 705 n.82 (D.C. Cir. 1985), *rev'd on other grounds sub nom. DOT v. Paralyzed Veterans of Am.*, 477 U.S. 597 (1986). The Civil Aeronautics Board had promulgated a final rule but "explicitly left its rulemaking docket open in order to receive additional comments from the public as well as from the Department of Justice." *Id.* The petitioners were "[a]ware that the rule might be undergoing modification, [were] unable to predict how extensive any modification would be, [and therefore] elected to wait until the regulation was in final form before seeking review." *Id.* We concluded that the petitioners' delay in challenging the final rule until after the agency responded to comments "simply served properly to

exhaust petitioners' administrative remedies, and to conserve the resources of both the litigants and this court." *Id*.

Nevertheless, we have generally declined to find reasonable grounds for untimely filings under both section 46110(a) and analogous statutes. *See Avia Dynamics, Inc. v. FAA*, 641 F.3d 515, 521 (D.C. Cir. 2011) ("[W]e have heretofore found 'reasonable grounds' only in cases in which the petitioner attributes the delay to more than simply ignorance of the order."). For example, in *EPIC*, we found that ambiguity in an agency letter denying a petition for rulemaking did not constitute reasonable grounds. *EPIC*, 2016 WL 2640535, at \*2. There, we explained that, instead of "assum[ing] the letter did not finally dismiss its petition," the petitioner "should have assumed the opposite and filed protectively for judicial review within 60 days." *Id*. *Investment Co.* itself clarified that, "[i]f any doubt as to the proper forum exists, careful counsel should file suit in both the court of appeals and the district court or . . . bring suit only in the court of appeals." 551 F.2d at 1280. The *Investment Co.* presumption was well-known—NFB therefore cannot cry ignorance of the proper forum in seeking to excuse their untimely challenge to the Final Rule.

NFB fails to meet our precise standard for reasonable grounds. As our sister circuits have adeptly explained, a delay caused by filing a petition or complaint in the wrong court by itself is not a reasonable ground for failing to meet the statutory sixty-day deadline.[5] *See Corbett v. TSA*, 767 F.3d 1171,

---

[5] In *Americopters, LLC v. FAA*, 441 F.3d 726 (9th Cir. 2006), which we cited favorably in *EPIC*, 2016 WL 2640535, at \*2, the Ninth Circuit explained that, under section 46110(a), "a delay stemming from the filing of a petition or complaint with the wrong court is not, in general, a reasonable ground for delay." *Americopters*, 441 F.3d at 734. Similarly, the Eleventh Circuit in

1178–79 (11th Cir. 2014); *Americopters, LLC v. FAA*, 441 F.3d 726, 734 (9th Cir. 2006). NFB's justification for its untimely filing is also clearly distinguishable from the rare circumstances where we have previously found reasonable grounds for delay. In *Safe Extensions*, the reasonable grounds for delay was due to the *agency's* misstatements about its future actions. *See* 509 F.3d at 602–04. And in *Paralyzed Veterans*, the reasonable grounds for delay was due to the petitioners' attempt to exhaust administrative remedies. 752 F.2d at 705 n.82. NFB had no such excuse—there was no confusion caused by *DOT's* actions or by a desire to further exhaust administrative remedies. The only "confusion" here was NFB's own mistaken reading of section 46110(a).[6] Yet we have made clear the appropriate recourse when a petitioner is unsure of the proper forum for filing a challenge to a rule: "If any doubt as to the proper forum exists, careful counsel should file suit in both the court of appeals and the district court or, since there would be no time bar to a proper action in

---

*Corbett v. TSA*, 767 F.3d 1171 (11th Cir. 2014), held that a petitioner's "dogged prosecution of his petition in the district court is not a reasonable ground to excuse his failure to file his petition on time in" the court of appeals. *Id.* at 1178–79.

[6] NFB claims that reasonable grounds should be found in part because of the strength of its statutory construction argument. Pet'rs' Br. 28 ("[T]he Blind Travelers filed when and where they did because the applicable rules of statutory construction supported that course, there was no controlling case law on the meaning of 'order' in § 46110(a) holding to the contrary, and Respondents themselves labelled [sic] the Final Rule as a 'rule' and not an 'order.'"). If the scope of a direct-review statute is unclear, petitioners should be mindful of the advice of *Investment Co.* and file in both venues. 551 F.2d at 1280. NFB did not heed this warning and their resultant untimely filing will not be excused simply because they raised colorable statutory construction arguments.

the district court, bring suit only in the court of appeals." *Investment Co.*, 551 F.2d at 1280. NFB failed to follow that path and we will not excuse that failure with the imprimatur of reasonable grounds for delay.

For the foregoing reasons, we dismiss the petition for review and deny the petition for a writ of mandamus.

*So ordered.*