**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1062**

HOWARD COUNTY, MARYLAND,

        Petitioner,

    v.

FEDERAL AVIATION ADMINISTRATION; STEPHEN DICKSON, Administrator, Federal Aviation Administration,

        Respondents,

    and

STATE OF MARYLAND,

        Intervenor.

On Petition for Review of an Order of the Federal Aviation Administration.

Submitted: March 26, 2020                Decided: July 1, 2020

Before MOTZ, DIAZ, and RUSHING, Circuit Judges.

Petition dismissed by unpublished per curiam opinion.

Gary W. Kuc, County Solicitor, Lewis J. Taylor, Senior Assistant County Solicitor, Melissa E. Goldmeier, Assistant County Solicitor, HOWARD COUNTY OFFICE OF LAW, Ellicott City, Maryland, for Petitioner. Jeffrey Bossert Clark, Assistant Attorney General, Eric Grant, Deputy Assistant Attorney General, Andrew C. Mergen, David

Gunter, Environment and Natural Resources Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; John Doyle, Office of Chief Counsel, FEDERAL AVIATION ADMINISTRATION, Washington, D.C., for Respondents. Brian E. Frosh, Attorney General, Louisa H. Goldstein, Assistant Attorney General, Robert J. Sager, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, BWI Airport, Maryland; W. Eric Pilsk, KAPLAN KIRSCH & ROCKWELL LLP, Washington, D.C., for Intervenor.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Howard County petitions this court for review of the Federal Aviation Administration's ("FAA") decision to re-approve construction of several buildings and related infrastructure at Baltimore-Washington International Thurgood Marshall Airport ("BWI"), contending that the agency's decision was arbitrary and capricious and violates the National Environmental Policy Act ("NEPA"). But the County's petition was not filed within 60 days of the agency's issuance of its decision, as required by 49 U.S.C. § 46110(a). Finding no reasonable grounds for delay, we dismiss the petition.

I.

In 1998, the Maryland Aviation Authority ("MAA"), which owns and operates BWI, sought federal approval to build a new cargo facility ("Midfield Cargo Facility") at BWI. Pursuant to its obligations under NEPA, the FAA conducted an environmental assessment of the proposed Midfield Cargo Facility. After completing the 1998 environmental assessment, the FAA concluded that the Midfield Cargo Facility would not result in any significant environmental impacts, allowing the project to move forward.

At the time the Midfield Cargo Facility was approved, the MAA anticipated that the build-out of the facility's four proposed buildings and attendant paved loading areas would occur over the next decade to accommodate demand. The MAA's demand projections turned out to be overly optimistic, and consequently not all of the Midfield Cargo Facility's proposed structures were built.

3

Since 2016, however, cargo growth at BWI has increased exponentially, attributable to the Midfield Cargo Facility's operator. At the operator's urging, the MAA sought the FAA's re-approval to construct the unfinished portion of the Midfield Cargo Facility. The MAA prepared a technical assessment comparing the environmental impacts of the completed facility as anticipated in the 1998 environmental assessment with the environmental impacts of the completed facility as re-proposed, which the FAA reviewed. Concluding that the environmental impacts of the re-proposed facility would not materially differ from the impacts initially considered in the 1998 assessment, the FAA formalized that determination in a written re-evaluation undertaken pursuant to the agency's NEPA guidelines.[1] The written re-evaluation was publicly released in November 2018.

Notice of the FAA's written re-authorization of the Mid-Field Cargo Facility was initially posted on the MAA's website and published in the *Baltimore Sun*'s legal notices section on November 8, 2018. On November 13, five days after the MAA first posted notice of the written re-evaluation on the agency's website and in the *Sun*, the MAA emailed the County a public notice of availability. On January 14, 67 days after November 8 but 60 days after November 13 (including tolling for the weekend), Howard County filed this petition pursuant to 49 U.S.C. § 46110(a), asking us to find the FAA's written

---

[1] In 2017, the MAA separately asked the FAA to approve paving of a cargo facility ramp at the Midfield Cargo Facility (the project intervenor Maryland's brief refers to as "Phase 2"). The MAA conducted a separate technical report detailing potential changes from the 1998 environmental assessment for that project. The FAA concurred in that technical report in August 2017, and it is not at issue in this case.

reevaluation arbitrary and capricious. The FAA moved to dismiss, contending that the County's petition is untimely.

## II.

A person with "a substantial interest in an order" issued by the FAA may file a petition challenging the order in federal circuit court. 49 U.S.C. § 46110(a). Petitions filed under 49 U.S.C. § 46110(a) "must be filed not later than 60 days after the [challenged] order is issued." This deadline may be excused "only if there are reasonable grounds for not filing by the 60th day." The first step in this inquiry is thus determining when an order is "issued." If a petition is not filed within 60 days of the order's issuance, we examine whether "reasonable grounds" exist for delay.

### A.

Howard County initially contends that its petition was timely because the FAA's written re-evaluation was not "issued" until the County received actual notice of the re-evaluation on November 13.

We recently explained that, under § 46110(a), "issued" means "the date the order was sent to the interested person." *See Skydive Myrtle Beach Inc. v. Horry Cty Dep't of Airports*, 735 F. App'x. 810, 813 (4th Cir. 2018) (per curiam). In *Skydive*, the interested party was a company that had filed a formal complaint about a local airport with the FAA, triggering a formal proceeding governed by agency regulations. The public was not a party to that grievance, had no role in the proceeding, and was not informed of the final order

5

resolving it. We concluded that the date that the order was sent to the company was the date that the order was issued.

The County does not quarrel with our holding but instead suggests that in this case *it* is an interested person, and therefore the date that it personally received the order controls. This argument fails. With respect to some orders involving formal parties to an agency proceeding, as in *Skydive*, there will only be one, or a small number, of individual interested parties. But in other cases, as with suits challenging an agency's compliance with NEPA, the general public, not any particular person, is the interested party. In this case, the public, not Howard County in particular, is the interested party. Consequently, the official date of release to the public — November 8 — is the date that the notice was "issued," and the 60-day period runs from that date. *See Citizens Ass'n of Georgetown v. Fed. Aviation Admin.*, 896 F.3d 425, 435 (D.C. Cir. 2018) ("[T]he clock starts ticking from the date the order is officially made public.") (quotation marks omitted). The fact that the County, whose interest is the same as that of the general public, lacked actual notice is irrelevant to the question of when the order was issued. *See id.* (holding that lack of *actual* notice does not delay the start of § 46110(a)'s 60-day filing period).

B.

Given that the FAA's written re-evaluation was issued on November 8, the County's petition (not filed until January 14) must be dismissed as untimely unless the County had reasonable grounds for delay.

We have not previously opined on what constitutes reasonable grounds for delay. Courts have construed the exception narrowly, "rarely" finding reasonable grounds for

6

delay. *Elec. Privacy Info. Ctr v. Fed. Aviation Admin.*, 821 F.3d 39, 43 (D.C. Cir. 2016). In assessing whether reasonable grounds for delay exist, they have looked to whether the delay is attributable primarily to the agency's behavior in creating confusion about the finality of its action or inducing complacence about the filing deadline. *See, e.g.*, *City of Phoenix v. Huerta*, 869 F.3d 963, 970 (D.C. Cir. 2017) (finding reasonable grounds for delay where the FAA "repeatedly communicated" that it would resolve the problem without resort to litigation and told petitioner to "ignore" its order, inducing complacence about the filing deadline); *Tulsa Airports Improvement Trust v. Fed. Aviation Admin.*, 839 F.3d 945, 950 (10th Cir. 2016) (noting agency-created confusion exception and collecting cases); *Safe Extensions, Inc. v. FAA.*, 509 F.3d 593 (D.C. Cir. 2007) (finding reasonable grounds for delay where the FAA affirmatively represented to petitioners that it would revise the order at issue, creating confusion about the order's finality); *Paralyzed Veterans of Am. v. Civil Aeronautics Board*, 752 F.2d 694, 705 n.82 (D.C. Cir. 1985) (finding reasonable grounds for delay where the agency failed to formally close the comment period and left unclear whether the regulation was in final form, creating confusion about the order's finality), *rev'd on other grounds by Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597 (1986).[2]

In cases when the petitioner is primarily to blame for the delay, however, courts have refused to deem a delay reasonable. This is true even where the delay was caused by

---

[2] Courts have also suggested reasonable grounds for delay exist where the petitioner is delayed in an effort to exhaust administrative remedies, an exception not relevant here. *See, e.g.*, *Americopters, LLC v. Fed. Aviation Admin.*, 441 F.3d 726, 733 (9th Cir. 2006); *Reder v. Fed. Aviation Admin.*, 116 F.3d 1261, 1263 (8th Cir. 1997).

a petitioner's honest and understandable mistake, so long as the mistake is not attributable to the agency itself. For example, as the D.C. Circuit has explained, "a delay caused by filing a petition or complaint in the wrong court by itself is not a reasonable ground for failing to meet the statutory sixty-day deadline." *Nat'l Fed. of the Blind v. U.S. Dep't of Transp.*, 827 F.3d 51, 58 (D.C. Cir. 2016). Similarly, the Tenth Circuit declined to find reasonable grounds for delay where an FAA letter was arguably ambiguous about the finality of its action. *See Tulsa Airports Improvement Trust*, 839 F.3d at 950. And where an agency has provided notice to the general public, a lack of notice to a specific petitioner ordinarily does not provide grounds for reasonable delay. *See Citizens Ass'n of Georgetown v. Fed. Aviation Admin.*, 896 F.3d at 435 (holding publication in local newspapers satisfies an agency's notice obligations, and a party's lack of actual notice is not reasonable grounds for failure to timely file for review).

The FAA maintains that, given that notice was published in a local newspaper and on the MAA's website, it is unreasonable for the County to profess ignorance of the filing deadline. It relies on the D.C. Circuit's decision in *Citizens Association of Georgetown* for the proposition that lack of *actual* notice does not "provide[] reasonable grounds for a petitioner's failure to timely file for review under section 46110." *Id.* Rather, the FAA contends that the County, as the petitioner challenging agency action, bears responsibility for compliance with the proper deadline. Instead of assuming that the notice of availability email was the first, controlling public notice, the County could have clarified the deadline by either inquiring with the agency or by conducting minimal research, either of which would have led the County to discover the correct date of issuance. The FAA notes that,

8

had the County simply downloaded the notice on the MAA's website, it would have seen a listed publication date of November 8 and 11, and the County would have necessarily learned of the appropriate filing deadline. In essence, the FAA urges us to hold that it was not reasonable for the County to rely on its own assumption about a notice of availability email to the exclusion of any other source.

We agree. The question is whether the agency created the County's confusion or if the County's miscalculation of the deadline was attributable to the County's unforced error. Unlike the cases in the D.C. Circuit where the FAA's statements created confusion or induced complacence, here the agency did not make any affirmative statement about the filing deadline or the initial date of availability. The MAA's November 13 email did not misstate the filing deadline (indeed, it did not include a filing deadline), nor did it indicate, expressly or otherwise, that the FAA would not enforce the 60-day statutory deadline. The email did not assert that the email was sent the day of official public notice, nor did it suggest that it constituted the exclusive source of public notices. Finally, the notice of public availability email did not suggest that the written re-evaluation was still under consideration.[3]

_____

[3] The FAA argues that because the noticing agency was the MAA, not the FAA, it should not be held to any email representations made by that agency. On the facts of this particular case, we disagree. The FAA is incorrect when it states that holding it to the MAA's representations "would allow a third party to frustrate the statutory limitations period by delaying notice to a particular person even after FAA provided a more general public notice." The FAA provided no general notice here, but instead appeared to make the MAA its agent in this respect. The argument is therefore inapposite.

9

To be sure, an agency may not hold out an email listserv as the exclusive source of public notice and then use other means of public notification in an attempt to avoid alerting potential petitioners to the true date of an order's issuance. As the D.C. Circuit has explained, § 46110(a)'s "short review period is a shield, not a sword." *Maryland v. Fed. Aviation Admin.*, 952 F.3d 288, 292 (D.C. Cir. 2020). But there is no indication that the agency here ever suggested that its public notice email listserv was either the exclusive or the initial source of public notices.

Therefore, any confusion on the part of the County about the proper filing deadline was attributable to the County's own error. We decline to excuse the County's delay.

III.

For the reasons stated above, the petition is

*DISMISSED.*