# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 7, 2018     Decided November 27, 2018

No. 17-1272

PARALYZED VETERANS OF AMERICA AND LARRY J. DODSON,
PETITIONERS

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION AND
ELAINE L. CHAO, IN HER OFFICIAL CAPACITY AS SECRETARY OF
TRANSPORTATION,
RESPONDENTS

———

Consolidated with 18-5016

———

On Petitions for Writ of Mandamus of Transfer Order of the
United States District Court for the District of Columbia and
for Review of Agency Action by the United States
Department of Transportation

———

*Karianne M. Jones* argued the cause for petitioners. With
her on the briefs was *Javier M. Guzman*.

*Samantha L. Chaifetz*, Attorney, U.S. Department of
Justice, argued the cause for respondents. With her on the brief
were *Michael S. Raab*, Attorney, *Steven G. Bradbury*, General
Counsel, U.S. Department of Transportation, *Paul M. Geier*,
Assistant General Counsel, and *Charles Enloe*, Trial Attorney.

Before: GRIFFITH, *Circuit Judge*, and EDWARDS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: Under 49 U.S.C. § 46110(a), petitions for review of specified orders issued by the Secretary of Transportation must be filed in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals for the circuit in which the petitioner resides or has its principal place of business. Section 46110 covers, in particular, judicial review of orders issued under part A of subtitle VII of title 49 of the U.S. Code ("Part A"), including orders issued pursuant to §§ 41708 and 41709. A petition for review of an order issued under Part A must be filed not later than 60 days after the order is issued unless there are reasonable grounds for not filing by the 60th day.

In 2016, the Department of Transportation ("DOT" or "Department") issued a rule requiring airlines to report the number of wheelchairs and scooters that are mishandled after being transported as checked luggage on passenger flights. This so-called "Reporting Rule" was scheduled to take effect on January 1, 2018. On March 21, 2017, however, DOT issued an "Extension Rule" that delayed the effective date of the Reporting Rule by one year. On July 31, 2017, over four months after the issuance of the Extension Rule, Paralyzed Veterans of America and Larry J. Dodson, a paralyzed Air Force veteran, ("the Petitioners") filed a lawsuit in the District Court challenging the Extension Rule. They contended that the rule was procedurally infirm because it was issued without notice-and-comment procedures and it was substantively invalid because it was arbitrary and capricious. In response to

this suit, DOT elected not to address the merits of the Petitioners' claims and instead argued only that the District Court lacked subject-matter jurisdiction over the suit. The District Court agreed with DOT, held that it lacked jurisdiction over this action, and then transferred the case "in the interests of justice" to this court pursuant to 28 U.S.C. § 1631. *Paralyzed Veterans of Am. v. U.S. Dep't of Transp.*, 286 F. Supp. 3d 111, 120 (D.D.C. 2017).

For the reasons stated below, we affirm the District Court. We agree that if there is jurisdiction to hear this suit, it lies in the courts of appeals. The Petitioners knew that challenges to the Extension Rule were required to be filed pursuant to § 46110(a). Indeed, the Petitioners cited the correct authority in their complaint. We therefore reject the Petitioners' request that this case be transferred back to the District Court. We further dismiss the case because the Petitioners' claim was filed after the 60-day statutory deadline and there are no "reasonable grounds" justifying their untimely filing.

## I.   BACKGROUND

### A.  *The Reporting Rule and the Extension Rule*

In 2011, DOT initiated notice-and-comment rulemaking to amend 14 C.F.R. § 234.6 to require airlines to report the number of wheelchairs and scooters that are delayed, damaged, or lost as checked luggage on domestic flights. The Department stated that the proposed data collection would be "crucial to understanding the magnitude of the problem as this data is not available to us through other means." Reporting Ancillary Airline Passenger Revenues, 76 Fed. Reg. 41,726, 41,728 (July 15, 2011). It further stressed that "[i]t is very important that passengers with mobility disabilities arrive at their destination with their wheelchair/scooter in good working order" because

"[w]ithout these devices, they will have great difficulty in exiting the airport or may be confined to their hotel or place of visit." *Id.*

Following notice-and-comment proceedings, DOT adopted the Reporting Rule on November 2, 2016. Reporting of Data for Mishandled Baggage and Wheelchairs and Scooters Transported in Aircraft Cargo Compartments, 81 Fed. Reg. 76,300. Under the rule, air carriers are required, on a monthly basis, "to report the number of mishandled wheelchairs and scooters and the total number of wheelchairs/scooters transported in the aircraft cargo department." *Id.* at 76,303. The Department set January 1, 2018, as the compliance date for the reporting requirement because that date would "provide[] air carriers with adequate time to update their internal systems and reporting processes." *Id.* at 76,305.

In January 2017, however, the White House issued a regulatory freeze memorandum, directing agencies to postpone for 60 days rules that had been published in the Federal Register but had not yet become effective. This directive did not appear to apply to the Reporting Rule because that rule had already become effective. However, according to the Petitioners, an industry lobbying group, Airlines for America, contacted officials at DOT multiple times to request that the Reporting Rule be delayed. Pets.' Br. 7.

On March 21, 2017, DOT issued the Extension Rule, a final rule that amended 14 C.F.R. § 234.6. DOT's announcement said:

> The Department of Transportation is amending its regulations by extending the compliance date of its final rule on reporting of data for mishandled baggage and wheelchairs in aircraft cargo compartments from

January 1, 2018 to January 1, 2019. Under that final rule, the mishandled-baggage data that air carriers are required to report changed, from the number of Mishandled Baggage Reports and the number of domestic passenger enplanements to the number of mishandled bags and the number of enplaned bags. The rule also requires separate statistics for mishandled wheelchairs and scooters used by passengers with disabilities and transported in aircraft cargo compartments. This extension is in response to a request by Airlines for America (A4A) and Delta.

Reporting of Data for Mishandled Baggage and Wheelchairs and Scooters Transported in Aircraft Cargo Compartments; Extension of Compliance Date, 82 Fed. Reg. 14,437, 14,437 (Mar. 21, 2017). The Extension Rule was adopted without notice-and-comment rulemaking.

Paralyzed Veterans voiced strong objections to the Extension Rule. In March 2017, nearly two weeks before the rule's publication, the group issued a press release opposing any change to the Reporting Rule. Addendum to Pets.' Br. 24. Members of Paralyzed Veterans also expressed their concerns in letters to subcommittees in both the House of Representatives and the Senate in March and May 2017. *Id.* at 32, 38–39. In addition, the Executive Director of Paralyzed Veterans wrote to the Secretary of Transportation to object to the delayed compliance date. *Id.* at 26–27. These efforts were futile, however. Even though they had received no encouraging responses from DOT or members of Congress, the Petitioners waited until July 31, 2017, to file their complaint in the District Court.

**B.** ***The Statutory Authorities Cited by DOT in Support of the Amendments to 14 C.F.R. § 234.6***

Prior to the adoption of the Reporting Rule in 2016, 49 U.S.C. §§ 41708 and 41709 were the statutory authorities cited by DOT to support rules incorporated as a part of 14 C.F.R. § 234.6. *Paralyzed Veterans of Am.*, 286 F. Supp. 3d at 118. Section 41708 permits the Secretary to require monthly reports from air carriers. *See* 49 U.S.C. § 41708(b)(1)(A) ("The Secretary may require an air carrier . . . to file annual, monthly, periodical, and special reports with the Secretary in the form and way prescribed by the Secretary . . . ."). And § 41709 authorizes the Secretary to specify the records that air carriers must keep. 49 U.S.C. § 41709(a) ("The Secretary of Transportation shall prescribe the form of records to be kept by an air carrier . . . and the time period during which the records shall be kept."). Both §§ 41708 and 41709 appear in Part A, and challenges to actions taken by DOT pursuant to these provisions are governed by 49 U.S.C. § 46110(a).

The statutory authorities cited by DOT to support the Reporting Rule and the Extension Rule, both of which amended 14 C.F.R. § 234.6, were mistakenly listed as "49 U.S.C. 329, 41101, and 41701." *See* Reporting of Data for Mishandled Baggage and Wheelchairs and Scooters Transported in Aircraft Cargo Compartments, 81 Fed. Reg. 76,300, 76,303 (Nov. 2, 2016); Reporting of Data for Mishandled Baggage and Wheelchairs and Scooters Transported in Aircraft Cargo Compartments; Extension of Compliance Date, 82 Fed. Reg. 14,437, 14,438 (Mar. 21, 2017). The parties agree that DOT should have cited §§ 41708 and 41709 to support these rules.

**C.** *Paralyzed Veterans' Challenge to the Extension Rule*

On July 31, 2017, the Petitioners filed suit in the District Court, alleging that DOT acted unlawfully by issuing the Extension Rule without notice and comment and without lawful justification. In addition, the Petitioners moved to stay the Extension Rule. In response, DOT cited 49 U.S.C. § 46110 and moved to dismiss the case for lack of jurisdiction.

The Petitioners argued that jurisdiction over this matter properly originated in the District Court, not in the court of appeals. The Petitioners pointed out that, in promulgating the Extension Rule, DOT cited 49 U.S.C. §§ 329, 41101, and 41701 as authority to support the rule. The Petitioners acknowledge that §§ 41101 and 41701 both appear in Part A, but point out that neither of those provisions supports the Extension Rule as a substantive matter. Moreover, DOT concedes that § 329 does not appear in Part A. The Petitioners thus argued before the District Court that the Extension Rule was not "issued under" Part A and the strictures of 49 U.S.C. § 46110(a) did not apply to their lawsuit. The District Court found, however, that "[the Petitioners] do not seriously dispute that the Extension Rule's citation to §§ 41101 and 41701 was a mistake." *Paralyzed Veterans of Am.*, 286 F. Supp. 3d at 119. Nor do the parties seriously disagree with the District Court's finding that "the Extension Rule could have been—and indeed, likely should have been—issued under [the] statutory authority [of §§ 41708 and 41709] that would have triggered direct review [in the court of appeals pursuant to 49 U.S.C. § 46110(a)]." *Id.* at 118.

After extensive review of the parties' respective positions, careful analysis of the record, and consideration of the applicable case law, the District Court rejected the Petitioners' claim. The court held that, "where, as here, the record suggests

that a rule mistakenly cites an inapposite statutory authority instead of some other, clearly applicable authority, and where there is no evidence (or even allegation) of bad-faith conduct on the part of the promulgating agency, the Court may treat the rule as issued 'under' the mistakenly omitted authority for purposes of ascertaining its jurisdiction under a direct-review statute." *Paralyzed Veterans of Am.*, 286 F. Supp. 3d at 119.

The District Court concluded that because the Extension Rule was issued under Part A authority within the meaning of § 46110, it could not exercise jurisdiction over this action. *Id.* at 120. The court accordingly transferred the case "in the interests of justice" to this court pursuant to 28 U.S.C. § 1631. *Id.* The court also denied without prejudice the Petitioners' motion for a stay, DOT's motion to dismiss for lack of subject-matter jurisdiction, and the Petitioners' motion for summary judgment.

Following the District Court's transfer order, the Petitioners' complaint was docketed by this court as a petition for review. The Petitioners then noticed an appeal of the District Court's transfer decision, which this court construed as a petition for a writ of mandamus. On January 30, 2018, this court acted on its own motion to consolidate the two petitions.

This court now faces two issues: First, whether, pursuant to 49 U.S.C. § 46110, original and exclusive jurisdiction to hear this case lies with the courts of appeals because the Extension Rule was issued at least in part under statutory authority found in title 49, subtitle VII, part A. Second, if review of the Extension Rule was required to be sought in accordance with § 46110, whether the Petitioners have shown "reasonable grounds" for failing to file their petition for review within 60 days after the issuance of the Extension Rule.

## II.    ANALYSIS

### A. *Standard of Review*

The District Court transferred the case to this court "in the interest of justice." *See* 28 U.S.C. § 1631. We review *de novo* the lower court's determination that it lacks subject matter jurisdiction. *Tootle v. Sec'y of Navy*, 446 F.3d 167, 173 (D.C. Cir. 2006).

### B. *The District Court Properly Transferred the Case Pursuant to 28 U.S.C. § 1631*

The Petitioners contest, through a writ of mandamus, the District Court's order of transfer to this court. The writ of mandamus is an "extraordinary remedy, to be reserved for extraordinary situations." *In re U.S. Dep't of Def.*, 848 F.2d 232, 234–35 (D.C. Cir. 1988) (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988)). Because we reject the Petitioners' claim that jurisdiction over this matter properly lies in the District Court, there is no ground for this court to issue a writ of mandamus.

Section 46110(a) provides for direct review in the court of appeals when the Secretary of Transportation issues an order under "Part A" of Subtitle VII. The term "order" includes "rules" for purposes of § 46110. *Nat'l Fed'n of the Blind v. U.S. Dep't of Transp.*, 827 F.3d 51, 55–57 (D.C. Cir. 2016). And Subtitle VII broadly covers "aviation programs," while "Part A" generally covers "Air Commerce and Safety." *See Cmtys. Against Runway Expansion, Inc. v. FAA*, 355 F.3d 678, 683 (D.C. Cir. 2004). Therefore, the Extension Rule obviously fits within the compass of Part A of Subtitle VII. And when DOT promulgated the Extension Rule, it cited Part A provisions as authority to support the rule; however, as indicated above, the

Department mistakenly cited §§ 41101 and 41701, instead of §§ 41708 and 41709.

Furthermore, the Petitioners are correct in pointing out that the two Part A statutory provisions cited by DOT – 49 U.S.C. §§ 41101 and 41701 – plainly do not support the Extension Rule. DOT also cited 49 C.F.R. 1.27(n) as a potential source of authority. *Paralyzed Veterans of Am.*, 286 F. Supp. 3d at 115. However, the District Court correctly rejected this claim because this provision merely delegates authority to the General Counsel to issue the Extension Rule on behalf of the Secretary. *Id.* Nevertheless, we find no merit in the Petitioners' claim that the direct-review provision of 49 U.S.C. § 46110(a) has no application in this case. The problem with the Petitioners' argument is that it rests on the implicit assumption that they were misled by DOT's failure to cite §§ 41708 and 41709 in support of the Extension Rule. The record does not support this assumption.

First, although DOT cited the wrong provisions in Part A when it promulgated the disputed rule, the Petitioners were on notice that the Department meant to rely on Part A. As explained above, Part A authorizes DOT's regulation of air commerce, including the agency's imposition of recordkeeping and reporting requirements. In addition, the Extension Rule – which amends 14 C.F.R. § 234.6 – expressly invokes Part A authority. And Part A provisions do, in fact, provide clearly applicable statutory authority for the Extension Rule. *Paralyzed Veterans of Am.*, 286 F. Supp. 3d at 118–19.

Second, the Petitioners acknowledge that prior to the adoption of the Reporting Rule, the citations of authority for 14 C.F.R. § 234.6 read: "49 U.S.C. 329 and Sections 41708 and 41709." *See* 14 C.F.R. pt. 234 (2011); Pets.' Br. 9–10. These statutory citations were mistakenly changed in 2011 when

DOT issued the Notice of Proposed Rulemaking for the Reporting Rule. As the District Court explained:

> At oral argument, the Department suggested that the notice of proposed rulemaking had actually meant to expand part 234's authority citation—that is, to cite chapters 411 and 417 of title 49. This mistake was then compounded by the drafters of the final Reporting Rule, who "corrected" the citation not by changing the phrase "41101 and 41701" to "411 and 417," but rather by changing the word "chapters" to "sections." In light of the foregoing review of the Reporting Rule's drafting history, this explanation for the change—the only one offered by either party—"makes perfect sense." *Am. Petroleum Inst.*, 714 F.3d at 1333. Why else would the Department have changed the citation from clearly applicable statutory authority (§§ 41708 and 41709) to clearly inapposite authority (§§ 41101 and 41701)?

*Paralyzed Veterans of Am.*, 286 F. Supp. 3d at 118–19. The Extension Rule's citation to §§ 41101 and 41701 was simply a mistake, but not one that misled the Petitioners. *See id.* at 119. The Petitioners do not seriously dispute any of this.

Finally, the Petitioners' complaint pointedly cites §§ 41708 and 41709 as the relevant statutory authorities for the Extension Rule:

> 15. Pursuant to 49 U.S.C. §§ 329, 41708, and 41709, the Secretary of Transportation has the authority to require air carriers to collect and report information related to transportation that the Secretary decides will contribute to the improvement of the transportation system.

16. In accordance with this legislative authority, the Secretary of Transportation has adopted regulations for the collection and reporting of data regarding mishandled wheelchairs and scooters that are entrusted to domestic airlines by disabled passengers and transported in aircraft cargo compartments. 14 C.F.R. § 234.6.

Joint Appendix 10. In light of this, the Petitioners are hard pressed to contend that they were somehow misled by DOT's mistaken citations to §§ 41101 and 41701. *See* 5 U.S.C. § 706(2) (providing that "due account shall be taken of the rule of prejudicial error" in review of agency actions).

Because §§ 41708 and 41709 indisputably provide authority for the Extension Rule, exclusive jurisdiction over this action lies with the courts of appeals pursuant to § 46110(a).

### C. *The Petitioners Had No "Reasonable Grounds" for Their Untimely Petition for Review*

There is no doubt that the petition for review in this case was filed more than 60 days after the issuance of the Extension Rule. It is therefore untimely under § 46110(a) unless there are reasonable grounds justifying the Petitioners' failure to file by the 60th day. On the record before us, we find that the Petitioners have offered no reasonable grounds for the untimely filing. We are therefore constrained to dismiss the petition for review.

"This court 'rarely [finds] reasonable grounds under section 46110(a).'" *Citizens Ass'n of Georgetown v. FAA*, 896 F.3d 425, 435 (D.C. Cir. 2018) (quoting *Elec. Privacy Info. Ctr. v. FAA*, 821 F.3d 39, 43 (D.C. Cir. 2016)). And we have made

it clear that "a delay caused by filing a petition or complaint in the wrong court by itself is not a reasonable ground for failing to meet the statutory sixty-day deadline." *Nat'l Fed'n of the Blind*, 827 F.3d 51, 58 (D.C. Cir. 2016). Moreover, the few instances in which we have found reasonable grounds are easily distinguishable from the circumstances in this case.

For example, in *City of Phoenix v. Huerta*, 869 F.3d 963 (D.C. Cir. 2017), we excused an untimely petition for review because the Federal Aviation Administration ("FAA") actively represented to the petitioners in that case that the agency's decision-making process had not yet consummated. *Id.* at 969–70. In at least two public meetings and three letters, agency officials assured the petitioners that their concerns regarding contested flight plans and related noise problems were being evaluated. *Id.* at 970. The FAA even reconvened a working group that had modified the flight plans. *Id.* Given this situation, we declined to "punish the petitioners for treating litigation as a last rather than a first resort when an agency behave[d] as the FAA did[.]" *Id.* There are no similar circumstances in this case. Paralyzed Veterans had some interactions with two congressional subcommittees, but attempts to communicate with officials at DOT were futile. *See* Addendum to Pets.' Br. at 29–40. And there is nothing in the record to indicate that the Petitioners here received any credible assurances from either legislators or DOT officials that the issuance of the Extension Rule would be delayed, or that the rule would be revised or withdrawn.

The circumstances in this case are also distinguishable from the situation that we considered in *Paralyzed Veterans of Am. v. C.A.B.*, 752 F.2d 694 (D.C. Cir. 1985), *rev'd on other grounds*, *Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597 (1986). In that case, we found that the agency had continued to accept comments about the rule at issue. *Id.* at 705

n.82 ("Aware that the rule might be undergoing modification, and unable to predict how extensive any modification would be, petitioners elected to wait until the regulation was in final form before seeking review."). We therefore agreed that it was prudent for the petitioners in that case "to exhaust [their] administrative remedies, and to conserve the resources of both the litigants and this court." *Id.* The situation in this case is quite different because DOT gave no indication to the Petitioners that there was even a remote possibility that the Extension Rule would be revised or rescinded. The Petitioners therefore had no legitimate expectation that their concerns would be addressed.

In cases of the sort presented here, a claim of "reasonable grounds" to justify an untimely filing under § 46110 must be supported by evidence showing that petitioners had reasonable bases for believing that agency officials would address the concerns at issue. *See City of Phoenix,* 869 F.3d at 970 (quoting *Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 596 (D.C. Cir. 2007)). In *Safe Extensions*, for example, the FAA actively misled the petitioners into believing that the agency would issue a new order that would afford redress. *See* 509 F.3d at 602–04. Moreover, since the FAA specifically encouraged the petitioners to wait for further agency action, it was reasonable for the petitioners to delay in filing a petition for review. *Id.* at 603–04. Here, the Petitioners have not shown that DOT misled them in any way about the Extension Rule's finality. In fact, the Petitioners admit that DOT officials never "substantively responded" to their requests. Pets.' Br. 41–42.

In these circumstances, the law of the circuit requires dismissal of this case. *See, e.g.*, *Citizens Ass'n of Georgetown*, 896 F.3d at 435; *Taylor v. Huerta*, 856 F.3d 1089, 1093–94 (D.C. Cir. 2017); *Nat'l Fed'n of the Blind,* 827 F.3d at 57-58; *Avia Dynamics, Inc. v. FAA*, 641 F.3d 515, 521 (D.C. Cir.

2011). Our sister circuits have adhered to the same legal principles enunciated here. *See, e.g.*, *Skydive Myrtle Beach v. Horry Cnty. Dep't of Airports*, 735 F. App'x 810, 815 (4th Cir. 2018) (per curiam); *Tulsa Airports Improvement Trust v. FAA*, 839 F.3d 945, 950 (10th Cir. 2016); *Corbett v. Transp. Sec. Admin.*, 767 F.3d 1171, 1178–79 (11th Cir. 2014); *Americopters, LLC v. FAA*, 441 F.3d 726, 732–34 (9th Cir. 2006). Since the Department did nothing to create uncertainty regarding the Extension Rule's finality, the Petitioners were required to meet the statutory 60-day filing deadline. They had good reason to know that direct review in the court of appeals was required pursuant to § 46110. And if the Petitioners had any doubt, they should have filed suit within sixty days "in both the court of appeals and the district court." *Nat'l Fed'n of the Blind,* 827 F.3d at 58 (citation omitted).

## III.   CONCLUSION

For the reasons set forth above, we deny the Petitioners' request for a writ of mandamus. We further dismiss the case because the Petitioners' claim was filed after the 60-day statutory deadline and there are no "reasonable grounds" justifying their untimely filing.

*So ordered*.